STATE of Minnesota, Respondent,

v.

Lloyd Mitchell BEST, Appellant.

No. C7–84–1851.

Court of Appeals of Minnesota.

July 2, 1985.

Hubert H. Humphrey, III, Atty. Gen., Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, John P. Dimich, Itasca Co. Atty., Grand Rapids, for respondent.

C. Paul Jones, State Public Defender, Susan K. Maki, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and NIERENGARTEN and RANDALL, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

Appellant Lloyd Mitchell Best was convicted of intrafamilial sexual abuse in the second degree. Appellant claims: (1) there is insufficient evidence to sustain his conviction; (2) the trial court abused its discretion in failing to grant a continuance; (3) the trial court erred in allowing the State to impeach him with a prior conviction for receiving stolen property; (4) he was denied his right to effective assistance of counsel; (5) it was error to assign a felony point for a prior conviction in which the sentence had been stayed, where the underlying offense had been committed after this offense; and (6) he is entitled to credit for pretrial time served in jail from the date of his arrest to the date he was released on his own recognizance. We affirm the conviction but modify the sentence to grant appellant an additional five days jail credit.

### FACTS

Appellant was convicted of one count of intrafamilial sexual abuse in the second degree in violation of Minn.Stat. § 609.-3642, subd. 1(2)(e) (Supp.1983) (multiple acts of intrafamilial sexual abuse over an extended period of time). The charge arose when appellant's thirteen-year-old stepdaughter, S.R.M., informed Itasca County authorities that appellant sexually

abused her on numerous occasions between October 1982 and June 1983.

In September, 1977, S.R.M.'s mother, Marilyn, married appellant. Marilyn's three children, S.R.M., S.A.M. and S.R.B. lived with the couple. The family moved frequently, living in Texas and Nevada. In 1981 they returned to Minnesota and initially lived in the Twin Cities. In October, 1982, Marilyn and the children moved to Grand Rapids, Minnesota, while appellant remained in Minneapolis because of his employment. During October appellant visited the family. In November appellant joined his family in Grand Rapids. The family rented a three bedroom house. Appellant and Marilyn slept in one bedroom. Marilyn's daughters, S.R.M. and S.A.M. shared a double bed in another room, while Marilyn's son, S.R.B., had his own room.

In October, 1982, through January, 1983, Marilyn worked weekdays, 8:00 a.m. until 5:00 p.m., as a bookkeeper for a drugstore. In January she quit the bookkeeping job and began working at a gas station from 2:00 p.m. until midnight three times a week. While she was at work, appellant stayed with the three children.

At trial thirteen-year-old S.R.M. testified appellant sexually abused her while her mother was at work. S.R.M. testified there were six incidents of abuse during a seven to eight month period. She could not state precisely when the abuse began but estimated the first instance occurred about a week after her twelfth birthday, October 8, 1982.

S.R.M. testified that the incidents of abuse usually occurred after she and her sister, S.A.M., had gone to sleep. She alleged that on these occasions appellant entered the bedroom, removed all or part of her sleep wear and fondled her breasts and vaginal area. She stated that on one occasion appellant carried her to his bedroom and penetrated her vagina with his finger. S.R.M.'s sister, S.A.M., also testified she witnessed appellant's abuse of S.R.M. and that it occurred every couple of days.

S.R.M. testified that on two occasions appellant molested her during the day.

The first incident occurred in the spring of 1983 when she and appellant were driving to Deer River to visit appellant's friend, Joe Julien. Before arriving at Julien's home, appellant pulled into a driveway, pulled down his pants, had sexual intercourse with her and then continued to Julien's house. A pretrial statement given by S.R.M. had initially alleged this incident occurred in the fall of 1982. Marilyn testified that in May of 1983, she recalled appellant and S.R.M. leaving the house in appellant's pickup truck heading for Julien's house.

S.R.M. testified that the last episode of sexual contact occurred in late May, 1983, the day the Best family moved from the rented house into a trailer. S.R.M. testified that she and appellant returned to the house alone and that while they were in the basement, appellant pulled her pants down and removed her top and fondled her breasts and vaginal area as she lay on a mattress.

Following appellant's arrest in April, 1984, Deputy Sheriff Gregory Lease spoke with appellant and read him S.R.M.'s statement concerning the incidents of abuse. Appellant responded by stating he could not believe this was happening, that he was drinking quite heavily and recalled dreams to that effect. At trial, appellant testified the dreams concerned going to prison and were not about sexual activity with S.R.M.

At trial, appellant denied the charges against him, but admitted that he had touched S.R.M.'s chest area "in fun" and had been "playing around there by accident." He also admitted pinching S.R.M. in the breast, although he claimed he didn't mean anything by it. Appellant claimed that the touching and pinching occurred when he and S.R.M. were wrestling and that nothing sexual was meant by the activity.

A defense witness, Richard Jones, testified that Joe Julien did not live at the Deer River property until June 1, 1983. A rent receipt was received into evidence indicating that Julien paid rent on that date.

Jones did not know if Julien moved any personal belongings to the property before then. The property had been vacant since the end of April.

Appellant was found guilty of one count of intrafamilial sexual abuse in the second degree. He was sentenced to the presumptive term of 41 months executed.

## ISSUES

1. Is the evidence sufficient to support the conviction?

2. Did the trial court abuse its discretion by denying appellant's request for a continuance?

3. Did the trial court abuse its discretion by ruling that appellant could be impeached by a four month old felony conviction?

4. Was appellant denied effective assistance of counsel?

5. Was it error for the trial court to assign one felony point for a prior conviction in which the sentence had been previously stayed, when the underlying offense was committed after this offense?

6. Is appellant entitled to credit for pretrial time served in jail from the date of his arrest to the date he was released on his own recognizance?

## ANALYSIS

### I.

 Appellant challenges the sufficiency of the evidence for his conviction. In reviewing a claim of insufficiency of evidence, an appellate court must view the evidence in the light most favorable to the verdict and assume the jury disbelieved any contradictory testimony. *State v. Parker,* 353 N.W.2d 122, 127 (Minn.1984) (citations omitted). Weighing the credibility of witnesses is the exclusive function of the jury. *State v. Pieschke,* 295 N.W.2d 580, 584 (Minn.1980). S.R.M.'s testimony concerning the incidents of abuse was positive, specific and corroborated by the eyewitness testimony of her sister, S.A.M. The record also reflects: (1) the children lacked motive

to fabricate the story; (2) appellant had the opportunity to commit the incidents of abuse; (3) when confronted with S.R.M.'s statement, appellant stated he had been drinking quite heavily and recalled dreams to that effect; and (4) appellant admitted touching and pinching S.R.M. in the breast area. Although there are some inconsistencies concerning the frequency and specific dates of the abuse and appellant denies the abuse, there is sufficient evidence to sustain the conviction.

### II.

Appellant claims the trial court abused its discretion in denying his requested continuance prior to trial.

The day of trial the prosecutor announced that S.R.M. claimed the incident of alleged sexual intercourse occurred on May 1, 1983, rather than the fall of 1982 as stated in the probable cause portion of the complaint. This resulted in dismissal of a charge of intrafamilial sexual abuse in the first degree. Defense counsel then moved for a continuance stating he didn't know when the acts of abuse S.R.M. was alleging occurred and that he needed this information to impeach her. The trial court responded by permitting defense counsel to depose S.R.M., and denied the motion for a continuance with leave to renew it following the deposition. After the deposition, the motion for a continuance was not renewed.

 A decision to grant or deny a continuance lies within the discretion of the trial court. *State v. Lloyd,* 345 N.W.2d 240, 247 (Minn.1984).

> The reviewing court must examine the circumstances before the trial court at the time the motion was made to determine whether the trial court's decision prejudiced defendant by materially affecting the outcome of the trial.

*State v. Turnipseed,* 297 N.W.2d 308, 311 (Minn.1980) (citations omitted).

 The trial court's action of provisionally denying the continuance and allowing the defense to depose S.R.M. was not an

abuse of discretion. The defense failed to renew the request for a continuance after the deposition and failed to identify any resulting prejudice from the trial court's initial denial of the request for the continuance.

### III.

At a pretrial hearing the trial court denied defense counsel's motion to preclude the State from using a four month old felony conviction for receiving stolen property for impeachment purposes. Appellant claims the trial court's refusal to preclude the State from using the felony conviction as impeachment evidence denied him a fair trial. At trial, appellant testified on his own behalf and acknowledged the prior conviction on direct examination. The trial court gave a cautionary instruction that Best's prior conviction was to be used only for the purpose of assessing credibility.

■ This court must review whether the trial court correctly determined that the probative value of the prior conviction outweighed its prejudicial effect under Minn. R.Evid. 609(a). The trial court ruling must be sustained unless there is a clear abuse of discretion. *State v. Brouillette*, 286 N.W.2d 702, 707 (Minn.1979). Appellant's prior conviction was probative of his truthfulness. Its probative value was enhanced by the fact that the underlying crime had been recently committed. *Id.* at 708.

■ At trial, appellant gave lengthy testimony and the credibility of his testimony was important to the resolution of his guilt or innocence. *Accord, State v. Heidelberger*, 353 N.W.2d 582, 590 (Minn.Ct.App. 1984) *pet. for rev. denied*, (Minn. Sept. 12, 1984) (greater case can be made for admitting impeachment evidence if defendant's credibility is central issue in case). The trial court minimized any potential prejudice to appellant by giving a specific cautionary instruction. The trial court did not abuse its discretion in ruling that appellant's prior conviction was admissible for impeachment purposes.

### IV.

Appellant claims he was denied effective assistance of counsel in violation of his Sixth Amendment rights because his trial attorney failed to: (1) question S.R.M. about a pretrial statement which he claims could establish her possible motive to fabricate her allegations; and (2) request the trial court to order S.R.M. to submit to a medical examination or provide medical records to ascertain whether there was any medical evidence of hymenal rupture. Although sexual penetration was not a necessary element of the offense, appellant claims medical evidence may have been able to have been used to impeach S.R.M.

■ In *State v. Heinkel*, 322 N.W.2d 322 (Minn.1982) the supreme court articulated the standard for evaluating effectiveness of counsel:

[T]he test is whether the attorney in the case under consideration exercised the customary skills and diligence that a reasonably competent attorney would exercise under similar circumstances. The concern is, therefore, not with the general skills of the attorney but with whether he did a reasonably competent job of trying to assure the defendant a fair trial. A defendant claiming ineffective assistance has the burden of proving that he is entitled to a new trial.

*Id.* at 326. Even if an attorney has made an error that is professionally unreasonable, a conviction cannot be overturned unless the defendant shows "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, — U.S. —, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).

■ The first alleged incident of ineffective assistance of counsel concerns the failure to cross-examine S.R.M. about a particular passage from her pretrial statement in which she stated that she had told a friend about the sexual abuse, had gotten in an argument with her sister and had wanted to move in with the friend to get away from her mother, sister and brother. This claim is without merit. Failure to cross-ex-

amine S.R.M. about this statement could have been a reasonable trial tactic. The statement made no mention of appellant and the relevance to S.R.M.'s alleged motive to fabricate the abuse is questionable.

The second alleged incident of ineffective assistance of counsel concerns defense counsel's failure to seek out medical evidence whether S.R.M.'s hymen was ruptured. This also could have been a reasonable tactical decision.[1] Counsel may have chosen to focus attention on the credibility of the child witnesses rather than face the prospect of refuting potentially devastating medical evidence that the child victim had been sexually penetrated. The State's failure to introduce any type of corroborating medical evidence could have been used to appellant's advantage. The record reflects appellant received reasonably effective assistance of counsel.

### V.

Appellant claims the trial court erred in computing his criminal history score by assigning one felony point for a prior conviction in which the sentence had been stayed, where the underlying offense had been committed after the offense in issue in this appeal. Minnesota Sentencing Guidelines II.B.1 and Comment II.B.101 provide that in computing a criminal history score "the offender is assigned one point for every felony conviction for which a felony sentence was stayed or imposed before the current sentencing." In this case appellant was sentenced for the felony conviction of receiving stolen property nearly five months before the sentencing in this appeal. The trial court properly added one felony point to appellant's criminal score for the prior conviction.

### VI.

Appellant alleges he is entitled to credit for pretrial time served in jail from the date of his arrest to the date he was released on his own recognizance. Appel-

lant was arrested on the second degree intrafamilial sex abuse charge on April 18, 1984, while serving a 60 day jail sentence imposed as a condition of probation on an unrelated felony conviction. The same day he made his first appearance, and bail was set at $5,000. On April 23, 1984, bail was removed as a condition of release. On April 30, 1984, appellant was released from jail on the other felony. Following imposition of sentence on the second degree intrafamilial sexual abuse offense, appellant's probation on the other felony was revoked, sentence was executed, and the two sentences were ordered to run concurrently.

Appellant alleges and the State concedes that under *State v. Patricelli*, 357 N.W.2d 89 (Minn.1984) and *State v. Dulski*, 363 N.W.2d 307 (Minn.1985), appellant is entitled to five days jail credit for the time spent in confinement between his arrest on April 18, 1984, and the removal of bail as a condition of his release on April 23, 1984.

Appellant claims he should be given an additional jail credit for time served between April 23–30. A defendant is entitled to credit for "all time spent in custody in connection with the offense or behavioral incident for which sentence is imposed." Minn.R.Crim.P. 27.03, subd. 4(B). In this case, once the bail requirement was removed as a condition of appellant's release, the remaining jail time was not "in connection with" the offense of intrafamilial sexual abuse in the second degree. Appellant is not entitled to additional jail credit for time served between April 23–30, 1984.

### DECISION

The evidence was sufficient to convict appellant of intrafamilial sexual abuse in the second degree. The trial court did not abuse its discretion in failing to grant a continuance or in ruling the defendant could be impeached by a felony conviction for receiving stolen property. Appellant was not denied effective assistance of counsel. The trial court properly added one

---

1. We do not have the benefit of knowing the reason counsel chose this tactic. "This issue is more effectively presented in a post-conviction proceeding under Minn.Stat. §§ 590.01–.06 (1984)." *State v. Hanson*, 366 N.W.2d 377, 379 (Minn.Ct.App.1985) (footnote omitted.)

felony point to appellant's criminal history score for the prior conviction of receiving stolen property. Appellant is entitled to an additional five days of jail credit.

AFFIRMED AS MODIFIED.