**STATE of Minnesota,
Petitioner, Appellant,**

v.

**James Michael CUSICK, Respondent.**

No. CX–84–2153.

Supreme Court of Minnesota.

May 23, 1986.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey Co. Atty., Steven C. DeCoster, Asst. Co. Atty., St. Paul, for appellant.

Charles E. Hawkins, St. Paul, for respondent.

AMDAHL, Chief Justice.

Defendant was found guilty by a district court jury of possession of cocaine and was sentenced by the trial court to 1 year and 1 day in prison, with execution stayed for 5 years on condition that he spend 6 months in the work house and otherwise comply

with the conditions of probation. The Court of Appeals, in a 2 to 1 decision, reversed defendant's conviction, holding that the state's evidence was insufficient to establish that defendant knowingly possessed the cocaine. *State v. Cusick*, 372 N.W.2d 424 (Minn.App.1985). Holding that the state's evidence was sufficient, we reverse the Court of Appeals and reinstate the judgment of conviction.

At 11:00 p.m. on April 15, 1984, Trooper Steven Pott of the Highway Patrol and other officers were dispatched to the scene of a one-car accident in Vadnais Heights. Pott found a Mazda on its left side in the ditch between the two ramps from Highway 35E to Highway 694 East and West. Defendant, who was standing outside the car, apparently uninjured, identified himself as the driver and said that there were no passengers. He said the car was owned by Jodie Crawford of Forest Lake, a friend of his, and that something had gone wrong with the steering and he had lost control. Defendant was "very lethargic" and slow to respond to questions, his pupils were dilated, and he was unsteady on his feet. When he was placed in the squad car and was asked for his driver's license, he said it was in the car in his wallet. Pott and several officers pushed the car off its side back onto its wheels. They found defendant's wallet on the ground where the door window on the driver's side had been; right next to it, only 2 or 3 inches away, they found a small brown vinyl cocaine-user's case containing a gold-colored tool with a spoon on one end and a knife on the other, a folded paper with a razor blade and a clear plastic bag containing what was later determined to be .8 grams of a powdery substance containing cocaine. Pott and the others found a number of other items scattered in a 25-foot area on the ground, mostly to the rear of the car. When Pott asked defendant what the powdery substance was, defendant said he did not know. When Pott said it looked like sugar, defendant said he guessed so. When Pott

asked defendant why there was a razor blade in it, defendant did not respond. When he asked defendant if the kit was his, defendant said no, he had not seen it.

At the station Pott tried to get defendant to provide a urine sample, but defendant, who kept falling asleep, was unable to provide one. Thus, we do not know what, if any, controlled substance defendant was on, although he appeared to be under the influence of something. The expert from the BCA testified that the powdery substance contained cocaine. He also testified, on cross-examination, that it was his understanding that cocaine made the user excitable and nervous, not sleepy.

Defendant did not testify.[1] His girl friend, Crawford, testified that she had known defendant only 2 weeks when the incident occurred. She testified that she and two others had been playing cards with defendant at a room in the Sheraton Midway and that defendant had asked to use her car. She testified that she was chemically dependent on speed and cocaine at the time of the incident and that the cocaine and all of the other items in the car were hers. She testified that the cocaine-user's kit was in her purse, which was in the back seat with her clothing and lots of the other things that were found scattered on the ground to the rear of the car. She testified that she did not tell defendant about the kit but that he knew she was using controlled substances. She testified that it was not until after the incident that defendant and she began living with each other, first at her parents' house in Forest Lake, then in an apartment in St. Paul. They still were living with each other at the time of trial.

In his closing argument, the prosecutor argued that if the jury believed Crawford's testimony, it should find defendant not guilty. But he argued that her testimony was not credible and that she was just trying to help defendant out because she loved him. In support of this argument, he

---

1. By not testifying, defendant avoided being impeached by his 1980 conviction of selling co-caine.

pointed out that her decision to testify was a last-minute decision that was not made until after the trial had started and defense counsel had already given his opening statement.

In reversing defendant's conviction outright, the Court of Appeals stated that the evidence was insufficient because the car was not defendant's car, most of the property in the car was Crawford's property, and Crawford was a cocaine user, and the only evidence of defendant's guilt was the "mere proximity" of defendant's wallet to the cocaine. While the majority opinion agreed that the jury could have disbelieved Crawford's testimony that the cocaine was hers, it apparently concluded that the jury could not disbelieve other aspects of Crawford's testimony and concluded that the evidence connecting defendant to the cocaine was insufficient. The dissenting opinion emphasized that the cocaine-user's kit was found right next to defendant's wallet, whereas all of the other property was in a different area, scattered to the rear of the car. It concluded that the jury reasonably could have inferred that the kit was in the front seat next to defendant's wallet before the accident (and the other property in the back seat) and that defendant constructively possessed it. It argued further that the jury could have concluded that defendant constructively possessed the cocaine jointly with Crawford in view of their relationship.

We have dealt with the issue of the sufficiency of the evidence to establish constructive possession of drugs in a number of cases, including: *State v. Lorenz*, 368 N.W.2d 284 (Minn.1985) (the fact that cocaine was discovered in defendant's dresser in his bedroom in apartment he shared with another was sufficient to establish defendant's constructive possession of cocaine; marijuana discovered in common area of apartment was also sufficiently connected to defendant, either as sole possessor or joint possessor, in view of evidence that marijuana was also found in his pocket and in his bedroom); *State v. Maldonado*, 322 N.W.2d 349 (Minn.1982) (upholding conviction of defendant for possessing marijuana found in truck driven by defendant in which there were passengers where defendant fled truck when police approached, where truck was owned by defendant, and where marijuana was found under driver's seat); *State v. Carr*, 311 Minn. 161, 249 N.W.2d 443 (1976) (affirming conviction of defendant for possession of controlled substance found in common area of apartment he shared with woman and to which others had access where defendant rushed toward area where drugs were found when police raid started); *State v. Florine*, 303 Minn. 103, 226 N.W.2d 609 (1975) (affirming conviction of defendant for constructive possession of cocaine and marijuana found in abandoned car which was owned by another but entrusted to defendant where the marijuana was in the trunk, the cocaine was on top of defendant's notebook on the back seat, and defendant's billfold was on the front seat). *See also State v. Willis*, 320 N.W.2d 726 (Minn.1982) (holding that state's evidence established that defendant constructively possessed gun found in car in which he was one of two passengers where before stop officer saw defendant make furtive movement and gun was under seat where defendant was seated).

Based on these decisions, we agree with the dissent in the Court of Appeals that the evidence was sufficient to establish constructive possession of the cocaine by defendant.

Reversed and conviction reinstated.

WAHL, J., dissents.

WAHL, Justice (dissenting).

I respectfully dissent. For the reasons stated in the decision of the court of appeals, I would find the evidence insufficient to establish Cusick's knowing possession of cocaine.

The state has not proved beyond a reasonable doubt, as it must, that the defendant consciously possessed the cocaine either physically or constructively and that he had actual knowledge of its nature. *State v. Florine*, 303 Minn. 103, 104, 226

N.W.2d 609, 610 (1975). Cusick did not actually possess the substance at the time of his arrest; nor is the inference strong, as *Florine* requires, that he at one time physically possessed the substance and had not abandoned his possessory interest in it but continued to exercise dominion and control over it up to the time of his arrest. *Id.*

The facts in this case require a result different from that reached in *Florine*. There, the cocaine in question was found in a small packet on top of an open notebook on the back seat of an unlocked vehicle abandoned on a country road. Although the vehicle did not belong to Florine, it had been left with him by its owner in the hope that he or his friends could sell it. The notebook on which the cocaine packet was found contained a biology quiz with Florine's name on it. The handwriting in the notebook and quiz was the same handwriting as that on a note in a billfold found on the front seat that contained Florine's driver license. On the floor of the front seat, police officers also found a bill addressed to Florine from Northern States Power Company, a receipt from a bank money order naming Florine as remitter, and a Christmas Seal letter to him. Such evidence was held sufficiently strong to support an inference that Florine at one time had had physical possession of the cocaine and, although not in physical possession at the time the police found it, had continued to consciously exercise dominion and control over it.

In the case before us, the evidence is undisputed that, although Cusick borrowed the automobile shortly before the accident, the automobile was owned by Jodie Crawford, his girlfriend, and was full of Crawford's papers, clothing and other personal property. In fact there was no evidence that any property in the car except the wallet belonged to Cusick. Many items in the car fell out and were scattered in a 25-foot area when the car went off the ramp and turned over. Officer Pott was unable to say which items had been in the car or where in the car those items had been. There was evidence that Crawford was chemically dependent on cocaine and that she used it by injection. She testified that the brown vinyl case and the cocaine in it was hers. Cusick introduced expert testimony that his physical condition, as observed by the officer at the accident scene, was inconsistent with the use of cocaine. This evidence, in addition to Officer Pott's specific testimony that the brown vinyl case was found "among some other things" on the ground near the wallet, is just not strong enough to support an inference that Cusick physically possessed the cocaine before the accident and was continuing to exercise dominion and control over it when it was found by Officer Pott.