**Manuel (NMN) RAMON, Respondent,**

v.

**STATE of Minnesota, Appellant.**

**No. C7–86–1031.**

Court of Appeals of Minnesota.

Jan. 13, 1987.

C. Paul Jones, Minnesota Public Defender, Renee Bergeron, Asst. Public Defender, Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., James B. Early, Asst. Atty. Gen., St. Paul, Wayne Swanson, Polk County Atty., Crookston, for appellant.

Heard, considered, and decided by POPOVICH, C.J., and WOZNIAK and FORSBERG, JJ.

## OPINION

WOZNIAK, Judge.

Respondent Manuel Ramon was charged and convicted of possession of a controlled substance (marijuana) in violation of Minn. Stat. §§ 152.09, subd. 1(2), 152.15, subd. 2(2), and misdemeanor theft in violation of Minn.Stat. § 609.52, subds. 2(1), 3(5). Following a petition for post-conviction relief, the post-conviction court vacated Ramon's convictions because the use of convictions over ten years old for impeachment at trial without prior notice or hearing amounted to plain error. We reverse and remand for a determination of issues not decided by the post-conviction court.

## FACTS

On March 7, 1984 at 11:15 a.m., an East Grand Forks police officer pulled over an automobile owned and operated by Jose Cherno. Ramon was a passenger in the vehicle, and once Cherno was stopped and placed in the police car, Ramon engaged in a brief conversation in Spanish with Cherno and then left the area.

The officer observed an open 24–pack of beer in the vehicle, as well as a ten–speed bicycle which was later identified as stolen. A search revealed 2.7 ounces of marijuana in the car's glove compartment. Cherno was then arrested and held in the Crookston jail. He initially told police he did not know how the marijuana got in the vehicle's glove compartment, that he had just picked up Ramon at a gas station before they were stopped, and that Ramon carried nothing in his hands when he entered the vehicle. Following this initial interrogation, police officers told Cherno that either he or Ramon would be responsible for the marijuana left in the vehicle. The police

then left Cherno alone for two to three hours and he gave a second statement consistent with his trial testimony.

Cherno claimed he loaned Ramon his car the day before on March 6, 1984. When Ramon returned the car the next day, Cherno noticed the bike in the back seat. The morning of March 7, Cherno walked to Ramon's home, retrieved his car keys, walked back to his car, and then returned to pick up Ramon. When Ramon entered Cherno's car, he brought the remainder of a 24–pack of beer. The two then drove to East Grand Forks where the police stopped them.

Cherno testified that when Ramon noticed the police following them, he took a bag out of the pack of beer and shoved it in the glove compartment. Ramon asked Cherno to take responsibility for the bike and the marijuana. Ramon later called Cherno in jail and stated that he would pay Cherno's jail bond if Cherno took responsibility for the marijuana. Ramon's trial counsel did not question Cherno regarding the prior inconsistent statements and alleged police coercion which took place during the initial interrogation.

Ramon testified that he never borrowed Cherno's car, but was picked up by Cherno as he was in the process of returning a bike he borrowed from his girlfriend. Ramon stated he was aware the license tabs had been removed from the bike, but was unaware the bike was stolen. Ramon testified that the 24–pack of beer was in the car when he entered and he did not know the marijuana was in the glove compartment. When police started following the vehicle, Ramon stated that Cherno was reluctant to stop because he "had something." Also, Ramon's conversation with Cherno the day of the arrest and his call to Cherno the next day were merely to offer help for his release.

In cross-examination, the prosecutor elicited that Ramon had four prior convictions. Two convictions, manslaughter and possession of marijuana, were more than ten years old. Ramon had been released from prison for 18 years following the posses-

sion of marijuana conviction and for 13 years following the manslaughter conviction. The two convictions for delivery of heroin were less than ten years old. Prior to his testimony, Ramon's attorney stated that they were aware of five or six prior convictions which would be used for impeachment. No hearing or advance written notice were provided regarding the prosecutor's intent to use the prior convictions. Ramon's attorney did not object to the prosecutor's use of the convictions.

After Ramon was found guilty of the charged offenses, he petitioned for post-conviction relief. Ramon's petition for post-conviction relief was heard by a different judge. The post-conviction court nonetheless vacated Ramon's convictions, finding a denial of his right to due process and a fair trial. The court held the use of stale convictions to impeach Ramon's testimony without a court determination as to their prejudicial effect resulted in plain error. The post-conviction court found it unnecessary to rule on Ramon's additional objections. Following a denial of its motion to reconsider, the State appealed.

### ISSUE

Did the post-conviction court err in vacating convictions due to the erroneous admission of prior convictions at trial?

### ANALYSIS

The scope of review in post-conviction proceedings is limited to whether sufficient evidence exists to sustain the post-conviction court findings. *Barness v. State*, 290 Minn. 509, 510, 187 N.W.2d 111, 112 (1971). When the evidence supports the lower court's findings, the appellate court will affirm. *Skavene v. State*, 290 Minn. 527, 528, 188 N.W.2d 419, 420 (1971). A "post-conviction proceeding is a collateral attack on a judgment which carries a presumption of regularity and which, therefore, cannot be lightly set aside." *State ex rel. Gray v. Tahash*, 279 Minn. 248, 250, 156 N.W.2d 228, 229 (1968).

The post-conviction court found that Ramon was unduly prejudiced when prior convictions over ten years old were used to impeach his testimony. The court relied upon Minn.R.Evid. 609, which provides in pertinent part:

> (b) Time limit. *Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction* or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, *unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.* However, evidence of a conviction more than 10 years old as calculated herein, is *not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.*

Minn.R.Evid. 609(b) (emphasis added). Moreover, the court relied upon *State v. Wenberg*, 289 N.W.2d 503, 504–05 (Minn. 1980), which held:

> The appropriate procedure under the Rules of Evidence is for the prosecutor to request a hearing outside the jury's presence, preferably before trial at the omnibus hearing, on the matter of whether any defense witness, including defendant, may be impeached by prior convictions.

*Id.*

Ramon notes the only discussion on the record prior to his testimony entailed a clarification of his testimonial rights, and a statement by his attorney that they were aware of the prior convictions and that the convictions would be used to impeach his credibility. The record indicates the State provided no advance written notice of intent to use the stale convictions pursuant to Rule 609. Also, no hearing was conducted outside the jury's presence to determine the admissibility of the convictions. Thus,

the trial court did not determine if the probative value of the convictions outweighed their prejudicial impact. Since his testimony was central to his case, Ramon contends the prejudicial impact of the prior convictions resulted in a violation of his right to due process and a fair trial.

Although the proper procedure for admitting the prior convictions was not followed, Ramon's attorney failed to object when the stale convictions were used to impeach Ramon's testimony. Ordinarily, the failure to object results in the forfeiture of the right to have that issue considered on appeal. *State v. Ture*, 353 N.W.2d 502, 516 (Minn.1984); *see also* Minn.R.Evid. 103(d). However, under Minn.R.Crim.P. 31.02, "[p]lain errors or defects affecting substantial rights may be considered by the court * * * on appeal although they were not brought to the attention of the trial court." Plain error "embodies the notion that an obvious mistake seriously affecting the fairness or integrity of a judicial proceeding has been committed." *United States v. Massey*, 594 F.2d 676, 682 (8th Cir.1979).

The post-conviction court held the admission of the stale convictions constituted plain error. Ramon claims evidence of a prior conviction for an offense identical to the one charged (marijuana possession) and a prior conviction for taking a life would result in prejudicial impact in support of the post-conviction court findings.

The State contends any error was both insubstantial and harmless. In *Wenberg*, although the court required a hearing before use of prior convictions, the court held *"[s]ince defendant failed to object* to any of these alleged 'improprieties' he must be deemed to have *forfeited his right to have this court consider these allegations on appeal." Wenberg*, 289 N.W.2d at 504 (emphasis added). The court failed to find that improper prosecutorial cross-examination regarding questions of prior convictions constituted plain error in that case.

Similarly, the Minnesota Supreme Court recently ruled on the failure to conduct an admissibility hearing before admitting cer-

tain out-of-court statements by child sex abuse victims pursuant to Minn.Stat. § 595.02, subd. 3. *State v. Burns,* 394 N.W.2d 495 (Minn.1986). The court held "even where a pretrial hearing should be held to determine admissibility of evidence, a defendant ordinarily cannot obtain relief on appeal for the absence of such a hearing if he did not object on that ground." *Id.* at 497. In *Burns,* the hearsay statements of the child constituted most of the evidence implicating the defendant, whereas the prior conviction evidence in this case was merely for impeachment. Thus, the prejudicial impact resulting from the foregone hearing and the scope of plain error in the matter at hand is substantially less than in *Burns.* In regard to prejudicial impact from prosecutorial improprieties, Minnesota courts hold "[t]he fact that defendant failed to object to the prosecutor's statements suggests he then did not consider them prejudicial." *Ture,* 353 N.W.2d at 516.

The State contends the integrity of the verdict was not tainted because the two admissible convictions for delivery of heroin would have sufficiently impeached Ramon. Jury verdicts are granted deference "if the jury, giving due regard to the presumption of innocence and the state's burden of proving guilt beyond a reasonable doubt, could reasonably have found defendant guilty." *State v. Parker,* 353 N.W.2d 122, 127 (Minn.1984). Since two convictions concededly were admissible as impeachment, we fail to see the prejudicial impact.

Moreover, the Minnesota Supreme Court has ruled these judgments cannot be lightly set aside by the post-conviction court. *Gray v. Tahash,* 279 Minn. at 250, 156 N.W.2d at 229. Reversal of the jury verdict by the post-conviction court must be viewed even more critically when the same judge did not preside over the two proceedings. The trial judge is in a far better position to evaluate the factors bearing on Ramon's credibility.

Thus, in light of the traditional deference granted jury verdicts and the availability of two prior related convictions, any error in admitting the prior convictions was not plain error affecting Ramon's substantial rights. Courts exercise their power to notice plain error only in exceptional circumstances. *Massey,* 594 F.2d at 682. The evidence does not support a finding of "plain error" seriously affecting the fairness of the judicial proceeding.

## DECISION

The post-conviction court erred in vacating Ramon's convictions. However, a number of additional issues asserted by Ramon were not ruled upon by the post-conviction court. Accordingly, we reverse the post-conviction court and remand for a determination of the additional issues asserted by Ramon.

Reversed and remanded.