Manuel (NMN) RAMON,
Petitioner, Appellant,

v.

STATE of Minnesota, Respondent.

No. CO–87–958.

Court of Appeals of Minnesota.

Dec. 8, 1987.
Review Denied Feb. 17, 1988.

C. Paul Jones, State Public Defender, Renee J. Bergeron, Asst. State Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., James B. Early, Sp. Asst. Atty. Gen., St. Paul, Wayne H. Swanson, Polk Co. Atty., Crookston, for respondent.

Considered and decided by CRIPPEN, P.J., and FOLEY and LANSING, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

This appeal is from an order denying postconviction relief. Appellant Manuel (NMN) Ramon initially obtained an order vacating his conviction for possession of marijuana in violation of Minn. Stat. §§ 152.09, subd. 1(2) and 152.15, subd. 2(2) (1984). This court reversed and remanded for determination of the remaining issues raised in the postconviction petition. *Ramon v. State,* 399 N.W.2d 138 (Minn.Ct. App.1987). On remand the trial court de-nied the petition, except to vacate Ramon's conviction for misdemeanor theft. The state has not filed a notice of review challenging that action. We affirm the denial of postconviction relief.

## FACTS

The facts concerning this prosecution are summarized in *Ramon,* 399 N.W.2d at 138–39. Ramon was the passenger in a car owned and driven by Jose Cherno that was stopped or approached by East Grand Forks police on March 7, 1984. The marijuana was found in a paper bag in the glove compartment of the car. The police officer, who had a warrant on Cherno for a traffic offense, took Cherno into custody.

Police questioned Cherno at the jail, with the aid of an interpreter, after obtaining Cherno's consent to further search the car. Cherno denied the marijuana found in the glove compartment was his. He also denied a mostly-empty 24–pack of beer found on the front seat was his but admitted the car was his. He was then given his *Miranda* rights. When the police officer asked him who the marijuana belonged to, he replied:

Cherno: I give a ride to somebody, but I don't see nothing in you [sic] hand.

Officer: You had somebody with you in your car, when you were stopped.

Cherno: I give a ride to East Grand Forks (inaudible comment). In the time I go to my job he need a ride and I give a ride, but I don't see nothing in the hand.

Cherno told the officers he had known Ramon as "Armando" for one month. He stated he had found "Armando" that morning at a gas station. When the officers questioned Cherno whether he saw Ramon put the marijuana in his car, they told him, "It is either yours or his," and "Belongs to you or him, whose is it?" The officers suggested Cherno could be charged with possession because he owned the car. They then suggested Ramon was dumping responsibility for the marijuana on Cherno. They told Cherno to think about it and they would return to talk to him.

Approximately two hours later, a second statement was taken from Cherno, without the use of an interpreter. Cherno stated he had gone to Ramon's house the night before and drank with him from the 24-pack found in his car. Ramon then borrowed Cherno's car. The next morning, when Cherno went to ask Ramon for the keys, Ramon asked Cherno for a ride to a grocery store, but they went instead to East Grand Forks to see a girl in an apartment building. After the police car began following them, Cherno told Ramon about the traffic ticket, and Ramon took something out of the 24-pack and put it in the glove compartment.

Cherno admitted in his second statement he had bought two marijuana joints from Ramon the previous Saturday. At trial, Cherno testified he had known Ramon for 17 months and had lived with him for a three-week period, although he was not living with him at the time of the offense.

Ramon's attorney made a motion to dismiss before trial based on lack of probable cause, arguing Cherno's statement to police was a result of misunderstanding and coercion. At the omnibus hearing, Cherno testified he had not been threatened with deportation to Cuba. He stated he had been confused when when questioned, particularly about his rights. He testified he told police he did not know whom the marijuana belonged to, that they then asked him who owned the car, but that he did not remember being told the marijuana either had to be his or Ramon's. The trial court denied the motion to dismiss, stating the assessment of Cherno's statement was for the finder of fact.

At trial, Cherno testified consistent with his second statement to police. On cross-examination, he was asked:

Q. Mr. Cherno, isn't it true that the police told you it either had to be yours or it had to be Mr. Ramon's at the time they questioned you?

A. They had me because I'm the owner of the car, but not because I'm responsible for the charges.

Ramon's attorney persisted but could not get a yes or no answer to his question about the police interrogation. Cherno would only say the police asked him whose marijuana it was.

The two police officers who questioned Cherno were asked about the "yours or his" questioning. The first officer said he "probably did" ask this pointed question. The second officer testified it was asked but "[n]ot exactly that way."

At this point, defense counsel moved to put into evidence the tape recording of the two Cherno statements. Counsel argued he could not effectively impeach Cherno with the written statement because Cherno did not read English. The trial court read the "yours or his" interrogation in chambers and concluded it had no impeachment value. The prosecutor stated the "yours or his" questioning had been admitted already by one of the officers.

Ramon had four prior felony convictions: 1965 conviction for sale of marijuana; a 1969 manslaughter conviction; and two convictions for delivery of heroin, one in 1974 and one in 1979. Defense counsel, in putting Ramon's decision to testify on the record, stated he had explained to Ramon his convictions could be used against him. At the postconviction hearing, Ramon's trial counsel testified he had made no objection to, or motion to exclude, the prior convictions for impeachment purposes, although the 1965 and 1969 convictions were beyond the 10-year rule. Minn.R.Evid. 609(b). As to the more recent heroin convictions, he testified it would be "absolutely fruitless" to move to exclude them.

## ISSUES

1. Did the postconviction court err in concluding Ramon was not denied effective assistance of counsel?

2. Did the court err in concluding Ramon was not denied his right to confrontation?

3. Did the court err in concluding the evidence was sufficient to sustain the conviction?

## ANALYSIS

### I.

Ramon contends he was denied effective assistance of counsel by his attorney's fail-

ure to thoroughly cross-examine Cherno about his two statements to police and his failure to challenge the use of convictions more than 10 years old for impeachment purposes.

In order to establish a claim of ineffective assistance of counsel, a defendant must show not only that counsel's representation "fell below an objective standard of reasonableness" but also that

> "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

*Gates v. State,* 398 N.W.2d 558, 561 (Minn. 1987) (quoting *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984)).

■ Ramon has not shown the adverse effect of counsel's failure to challenge the use of the stale convictions. In *Ramon,* we stated:

> Since two convictions concededly were admissible as impeachment, we fail to see the prejudicial impact [of the 1965 and 1969 convictions].

*Id.* at 141.

Ramon also contends defense counsel should have questioned Cherno thoroughly on his two statements to police. Defense counsel's cross-examination of Cherno was less than vigorous considering the critical nature of his testimony, Cherno's own potential criminal liability, and the police exploitation of that liability in questioning him. Cherno was not a witness whose cross-examination called for delicacy as a matter of trial strategy. *Cf. State v. Best,* 370 N.W.2d 691, 695–96 (Minn.Ct.App.1985) (counsel not ineffective for failing to more closely cross-examine sexual abuse victim); *see also Lukens v. State,* 400 N.W.2d 794, 798 (Minn.Ct.App.1987), *pet. for rev. granted* (Minn. April 17, 1987) (reversing grant of postconviction relief based in part on ineffective assistance of counsel where, among other claimed errors, counsel limited cross-examination of sexual abuse victim).

■ Our review of the postconviction proceeding is limited to whether there was sufficient evidence to sustain the findings of the postconviction court. *Kochevar v. State,* 281 N.W.2d 680, 687 (Minn.1979). There is sufficient evidence that the limited cross-examination of Cherno did not deny Ramon effective assistance of counsel.

The "yours or his" questions were statements made by police, not by Cherno, and thus were not prior inconsistent statements. Moreover, defense counsel elicited from the police officers admissions, although equivocal, that they had used this tactic. Ramon has not shown it was not sound trial strategy to bring out the coercive aspects of police questioning through the police officers rather than through Cherno. *See Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065 (defendant must overcome the presumption the challenged action is sound trial strategy).

Ramon contends defense counsel failed to elicit the fact Cherno made two statements inconsistent with each other to police. Defense counsel did fail to bring this out on cross-examination, referring only to "a statement" Cherno gave; however, he elicited the separate nature of the statements from one of the police officers. The prosecutor himself elicited the fact Cherno stated in the second interview only the marijuana belonged to Ramon.

Ramon's contention the two Cherno statements were inconsistent is based primarily on Cherno's initial statement Ramon had "nothing in the hand." This statement is ambiguous and incomplete, less than a full denial his passenger was in possession of marijuana. Cherno claimed the bag of marijuana was in the 24–pack, which by his testimony had remained in the car overnight. Therefore, it was not clearly inconsistent to have said Ramon had nothing in his hand when Cherno stopped to give him a ride.

Cherno plainly added details in his second statement not only implicating Ramon but also raising the possibility Cherno and Ramon were in joint possession of the marijuana. Contrary to the police officers' questioning, possession of marijuana may be joint as well as exclusive. *United*

*States v. Caspers,* 736 F.2d 1246, 1249 (8th Cir.1984).

Thus, even if, with more vigorous cross-examination, the jury concluded Cherno was less than truthful, it could have found he was only diminishing his own responsibility, not fabricating Ramon's. In his second statement, Cherno admitted drinking the night before with Ramon from the 24-pack in which he said the marijuana was stashed. He also admitted buying marijuana from Ramon the previous Saturday. These facts, if brought out by further examination, would not have helped Ramon. *See Best,* 370 N.W.2d at 696 (counsel not ineffective for failing to pursue medical evidence that might have harmed defendant).

Ramon also contends his counsel should have cross-examined Cherno on the possibility of his deportation to Cuba for the drug offense. Defense counsel did, however, raise this question at the omnibus hearing, and Cherno denied he had been threatened in this way. There is no indication cross-examination on this subject would have been effective.

Ramon has not shown "a reasonable probability" the result would have been different with further cross-examination of Cherno. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068. It was for the jury to assess Cherno's credibility, and the jury had before it Cherno's obvious motivation to shift blame onto Ramon, as well as the pointed interrogation by police. Cherno's self-interest was vigorously argued to the jury.

In his pro se supplemental brief, Ramon contends his counsel should have questioned the police officers at the omnibus hearing on their interrogation of Cherno and should have more extensively cross-examined them at trial. However, defense counsel could not have anticipated Cherno would deny the "yours or his" interrogation at the omnibus hearing. Therefore, his decision to elicit the nature of the questioning through Cherno was reasonable.

Moreover, we cannot say the trial court would have dismissed the charges for lack of probable cause. *See Gates,* 398 N.W.2d at 561–62. At trial, defense counsel did elicit the "yours or his" interrogation from the police officers as well as the separate nature of Cherno's two statements. Counsel was not ineffective for failing to elicit a police admission they coerced Cherno, if such was the case.

Ramon also personally contends defense counsel blocked his efforts to obtain other appointed counsel. A defendant, however, has no right to court-appointed counsel of his choice and may obtain a substitution of counsel only on a showing of exceptional circumstances, which Ramon has not made. *State v. Vance,* 254 N.W.2d 353, 358 (Minn. 1977).

**II.**

Ramon contends he was denied his right of confrontation when the trial court denied his motion to introduce the tape of Cherno's statements. He claims this was the only way for him to effectively impeach Cherno.

The trial court properly concluded there was no impeachment value in the "yours or his" interrogation, as this was not a prior inconsistent statement by Cherno. The statement that Ramon "had nothing in the hand," even if a prior inconsistent statement, was not advanced as grounds for admission. The taped statement was not admissible as extrinsic evidence of a prior inconsistent statement unless Cherno had been questioned about it, which he had not. Minn.R.Evid. 613(b). Even if he had been asked, it appears Cherno could have explained away the reference to "nothing in the hand." *See Spears v. State,* 300 N.W.2d 173, 175 (Minn.1980) (court did not prejudicially abuse its discretion in declining to admit deputy's prior statement omitting reference to object in defendant's hand where questioning of deputy had been brief and deputy could have easily explained omission on redirect).

**III.**

Ramon contends the evidence was insufficient to establish constructive possession because Cherno's testimony was not corroborated. *See* Minn.Stat. § 634.04 (1986)

(conviction cannot rest on uncorroborated testimony of an accomplice).

■ Corroborating evidence must point to the defendant's guilt in some substantial degree. *State v. Mathiasen*, 267 Minn. 393, 398, 127 N.W.2d 534, 538 (1964). It cannot be evidence merely showing the offense was committed by someone. *Id.;* Minn.Stat. § 634.04. The evidence linking Ramon to the marijuana, besides Cherno's testimony, was his presence in the passenger seat nearest the glove compartment, the appearance of the marijuana bag in the compartment as if it had been "stuffed in," the bicycle in the back seat (admittedly in Ramon's temporary possession) and his acquaintance with Cherno. We conclude this evidence was sufficient to corroborate Cherno's testimony; therefore, we do not address the question whether Cherno was an accomplice.

In *State v. Cusick*, 387 N.W.2d 179, 181 (Minn.1986) the supreme court held that evidence defendant was driving a car which overturned, dumping cocaine next to defendant's wallet, was sufficient to sustain the conviction for possession of cocaine.

In *Cusick*, the defendant was driving his girlfriend's car, and the wallet was apparently the only property in the car that was his. The supreme court, however, in reversing this court's decision that constructive possession was not established, emphasized the proximity of the cocaine to defendant's wallet and defendant's relationship with the car owner, from which joint possession could have been inferred. *Id.* at 181.

Under *Cusick*, the facts linking Ramon to the marijuana may not have been sufficient to support his conviction, but were sufficient to corroborate Cherno's testimony. The presence of the marijuana tended only to establish that someone in the car was in possession. Ramon, however, was closest to the glove compartment, and the police saw no furtive movements prior to the stop; therefore, it was more likely Ramon had stuffed the marijuana in the glove compartment than that Cherno had done so, a movement police would likely have noticed. *See Cusick*, 387 N.W.2d at 181

(jury could have inferred from proximity after accident that cocaine-user kit had been next to defendant's wallet). The presence of the bike tended to show joint use of the car, and the relationship of Cherno and Ramon also supported the inference Ramon had access to areas a normal passenger would not have. *See id.* (jury could have inferred joint possession from defendant's relationship with car owner).

This evidence was sufficient to restore confidence in Cherno's testimony and point to Ramon's guilt in a substantial degree. *State v. Lemire*, 315 N.W.2d 606, 610 (Minn.1982).

### DECISION

The postconviction court did not err in concluding Ramon was not denied the effective assistance of counsel or the right of confrontation. The court did not err in determining the evidence was sufficient to support the conviction.

Affirmed.