Christopher Johnson was indicted for possession of cocaine in violation of § 20-2-70, Code of Alabama 1975. The jury found him "guilty as charged" and following a sentencing hearing the trial judge sentenced him to 15 years in the penitentiary.
Selma Police Officer W.O. Terrell testified that he was a "beat" officer. On October 4, 1983, at approximately 4:00 p.m. he was walking his beat when a reliable confidential informant approached him. This informant told him that a man in a Ford automobile had tried to sell the informant some cocaine. The informant then showed Terrell the automobile which was parked in an alley. Terrell began walking toward the Ford automobile and, as he did so, the driver of the car drove it around the corner and parked in front of a store. Terrell walked around the corner and observed the appellant parking this car. Terrell called for assistance on his "walkie-talkie" and approached appellant. Terrell "took hold of his arm" and at this time Johnson "jerked loose and ran." (R. 62). Terrell ran after the appellant and began calling for assistance. As Terrell was chasing the appellant, he saw the appellant drop a "cellophane bag wrapped in tin foil" on the sidewalk. Appellant then turned a corner and Terrell lost sight of him.
Terrell and Officer Chuck Weber walked back to the spot where the appellant, Johnson, had dropped the tinfoil, picked the packet up and turned it over to Detective Smitherman. Terrell identified a piece of tinfoil wrapped around a cellophane bag with a white substance inside of the bag as the packet he saw the appellant drop on the afternoon of October 4, 1983.
Officer Charles Weber testified that on October 4, 1983 at approximately 4:00 p.m., he received a radio transmission from Officer Terrell. Terrell stated that he was about to talk to a subject. The radio dispatch then told Weber to move into the area for assistance, which he did. Upon moving into the area he heard another broadcast from Terrell stating that he was in pursuit, on foot, of the subject. Weber proceeded to the scene and saw Terrell who told him that he had lost sight of the appellant. Terrell then told Weber that the appellant had dropped something in front of a store down the street and they walked back to the place Terrell had indicated. Together they located a piece of tinfoil which Terrell said the appellant dropped and Weber picked it up. Inside the tinfoil was a bag which contained a white powdery substance. Weber turned this evidence over to Detective Smitherman. *Page 1123 
Steve Smitherman testified that he was employed as a detective by the Selma Police Department. He received a radio dispatch from Terrell for assistance on October 4, 1983. He proceeded to the scene and stopped his car at an intersection near the area indicated by Terrell. He looked up the side of the street where Terrell had been chasing the subject and observed no pedestrian traffic on that side. The only person he saw was Terrell coming around the corner. Officers Weber and Terrell turned over the tinfoil packet to him. He then called Investigator Billy Duke to the scene. Investigator Duke came to the scene and they then went to the courthouse where Duke performed a chemical test on the substance inside the tinfoil. This field test revealed that the white substance was, in fact, cocaine.
Smitherman then locked the evidence up in his desk until Monday, October 7, 1983, at which time he turned the evidence over to Evidence Technician Jim Rutledge who transported this evidence to Montgomery.
Billy Duke testified that he was employed by the Dallas County Sheriff's Department. He stated that he had worked in the narcotics division for some 13 years. Duke stated that in his experience in the narcotics field he has become aware of the "street value" of different drugs. Duke was then allowed to testify that a gram of cocaine has a street value of between $90.00 and $110.00. Such testimony was over strenuous objection by defense counsel.
James Rutledge testified that he received the evidence in question from Detective Smitherman. He transported this evidence to the forensic laboratory in Montgomery.
Allen Adair testified by stipulation that he was a criminalist with the Department of Forensic Sciences in Montgomery. He received one sealed paper bag containing a white powdery substance. Adair conducted a laboratory analysis of this evidence which revealed that the clear plastic bag contained 2.3 grams of cocaine.
The appellant testified, in essence, that he did not have any cocaine on him when Terrell chased him. He had never seen the evidence before. Johnson stated that he did drop something while running from Terrell, but the object he dropped was a small metal cross.
Shirley Woods testified, in essence, that she was present when Terrell approached the appellant. She had been talking with the appellant inside a store and the appellant had asked her if he could borrow some money. The appellant emptied his pockets to show her he did not have any money and the only thing in his pocket was a small cross. She further stated that, when Terrell took hold of appellant's arm, the appellant, Johnson, ran away from him. While appellant was running he dropped the cross and Terrell stopped and picked it up.
The appellant does not challenge the weight and sufficiency of the evidence against him on appeal. Our review of the record indicates sufficient evidence was presented to place this case before the jury.
 I
Appellant argues that the trial court erred in allowing Officer Duke to testify to the "street value" of cocaine. He specifically argues that, in a possession case, the "street value" of a prohibited substance is immaterial under the statute and, thus, evidence of such is not admissible.
A review of the statute reveals that the value of the controlled substance would be immaterial in a prosecution for possession. The possession of any amount contrary to the provisions of the act is a violation of state law; therefore, the value of the drugs so possessed has no bearing on the outcome in such a case. Having decided that such evidence is not material to the charge, we must now look to see if the admission of such evidence, however, mandates a reversal of this cause.
This court has held on numerous occasions that an error that might have been prejudicial in a close case does not require reversal when the evidence of the defendant's guilt is strong. See Boyd v. *Page 1124 State, 50 Ala. App. 394, 279 So.2d 565 (1973); Luker v. State,361 So.2d 1124 (Ala.Crim.App.), cert. denied, 361 So.2d 1127
(Ala. 1978); Williams v. State, 451 So.2d 411 (Ala.Crim.App. 1984). Further, in such a case the defendant must show that the trial court's error was, in fact, prejudicial to him. Ex parteHarris, 428 So.2d 124 (Ala. 1983); C. Gamble, McElroy's AlabamaEvidence, § 430.01 (3d Ed. 1977). Moreover, before a criminal conviction is to be reversed, it must appear to the court that the error complained of has probably injuriously affected the substantial rights of the defendant. Chillous v. State,405 So.2d 58 (Ala.Crim.App. 1981).
A review of the evidence in this cause fails to show that the error complained of has injuriously affected the substantial rights of this appellant. The appellant was not denied a fair trial as a result of the admission of this testimony. Rule 45 A.R.A.P. Therefore, this appeal is due to be affirmed.
AFFIRMED.
All the Judges concur.