TAYLOR, Presiding Judge.
The appellant, Johnny Lee Heliums, was convicted of capital murder, in violation of § 13A-5-40(a)(10), Code of Alabama 1975. He was sentenced to life in the State penitentiary without the possibility of parole.
The facts tended to show that the appellant and his wife, Diane Heliums, had been living in a mobile home on County Road 34 between Winfield and Fayette up until December 31, 1986. On this date they separated. Living in the home with the couple were Teresa, Mark, and Steve Corbin, Diane’s children by a previous marriage, and Michael Heliums, the appellant’s son by a previous marriage.
On the evening of January 3, 1987, Jimmy Morrison, the brother of Diane Hel-iums, went to the home of the appellant. It was decided that Mr. Morrison would take his two children and two of Mrs. Hel-lums’s children to the skating rink. The appellant agreed to pick up the children after the skating rink closed. Before the group left, two of Mrs. Hellums’s children requested that the appellant approach their mother and plead with her to return to the family home.
Later that evening, Jimmy Morrison saw the appellant at Morrison’s mother’s residence. Mr. Heliums asked Mr. Morrison if he would accompany him to town, and Mr. Morrison agreed. They each enjoyed one beer on the trip to Fayette.
Once in Fayette, the appellant drove to Terrace Park Apartments, where he saw his wife’s car parked. Both Mr. Heliums and Mr. Morrison were aware that Diane Hellums’s relative by marriage, Sadie Lynn Milligan, lived at those apartments with Willis Pennington and their children. Morrison told the appellant not to “go in and say nothing to Diane and make her mad because she’s fixing to come home.”
Nevertheless, Mr. Heliums got out of his car and went to the apartment where Milli-gan and Pennington lived. Before getting out of the car, the appellant took a gun out of his car and put the gun in the back of his pants under his shirttail and vest. Mr. Morrison, who remained seated on the passenger side of Mr. Hellums’s car, saw the appellant knock on the apartment door and then enter the dwelling.
Once inside the apartment, the appellant saw his wife, Milligan, Pennington, and Ms. Milligan’s three-month-old baby sitting on *613 the couch. After a brief conversation with his wife in the den, the appellant and his wife went into the kitchen and again talked. They were discussing the possibility of Mrs. Hellums’s returning to the marital home.
Shortly thereafter, Mrs. Heliums went back into the den and sat back down on the couch. Milligan, Pennington, and the child were still sitting on the couch. The appellant again asked Mrs. Heliums to return home. She refused.
At this point, the appellant pulled the gun from his pants and shot his wife in the chest. He next shot Willis Pennington in the leg and then he shot Sadie Milligan in the chest. He then left the apartment.
Jimmy Morrison, who was still waiting for the appellant in the car, heard the three shots. He got out of the car and as he approached the apartment, he was met by the appellant. Heliums handed the gun to Morrison and said, “Jimmy, I shot Diane, Willis, and Sadie.” Morrison handed the gun back to Heliums and they went into the apartment.
Once inside, the appellant called the police. He indicated to the dispatcher that “We’ve had a killing” and “I shot them.” The police quickly arrived and Johnny Hel-iums was placed under arrest and taken into custody at the Payette County Sheriff’s Department. Diane Heliums and Sadie Milligan each died of a single gunshot wound to the chest. Willis Pennington recovered from his wounds.
The appellant raises two issues on appeal.
I
The appellant first contends that the trial court erred in allowing hearsay testimony for the purpose of impeaching an immaterial fact, over objection by the defendant. That testimony concerned threats against a third person, i.e., Michael Hel-iums, allegedly made by the defendant. The appellant further argues that the reason that the testimony was immaterial was because the threats had no connection to either victim.
The testimony in question is as follows:
“Q Danny, do you recall being in the— “MR. JOHNSON: I might say to preface this, Your Honor, what I’m offering here is not a hearsay statement and it’s not for the purpose of merely impeaching Michael Heliums, this is further testimony in rebuttal.
“THE COURT: Okay.
“Q Danny, do you recall being in the automobile on a trip with Johnny and Michael shortly before this incident?
“A (Witness nods affirmatively.)
“Q Where were you all going?
“A Houston, Mississippi.
“Q Do you know when that was?
“A It was on Thursday night.
“Q That was on Thursday night before the killing on Saturday?
“A Yes, sir.
“Q Was there any conversation there in the car with you and Johnny Heliums and Michael between Johnny and his son Mike?
“A Yes, sir.
“Q Tell the jury what they said to each other, please.
“MR. COLVIN: Your Honor, we object to what Michael—
“MR. HOLLINGSWORTH: We object to what Michael said, Your Honor, as being hearsay.
“THE COURT: Michael or Johnny? “MR. JOHNSTON: It’s a conversation that the defendant engaged in, Your Honor.
“MR. COLVIN: With his son Michael. He’s trying to solicit testimony from Michael who has been on the stand. “MR. JOHNSTON: We’ve given him the time and place and who was present and we’re offering to show what the defendant said.
“THE COURT: Overruled.
“A We were — my dad had told Johnny that Diane—
“MR HOLLINGSWOTH: Object, Your Honor, to what his dad had told anybody.
*614 “THE COURT: Sustained.
“Q Just leave that out and tell us what was said there in the defendant’s presence and what he said, not what somebody you understand had told him.
“A Johnny had told Michael he ought to blow his head off for wrecking his marriage.
“Q He said that there in the car?
“A Yes, sir.
“MR. JOHNSTON: That’s all, thank you.
“MR. HOLLINGSWORTH: Your Hon- or, we’re going to object to that, it has nothing to do with the charges pending for the defendant. We move for a mistrial. It’s immaterial and irrelevant.
“MR. JOHNSON: Your Honor, it has to do with the marriage.
“MR. HOLLINGSWORTH: It’s a threat made against somebody totally different, if it’s true at all. It has nothing to do with the victims.
“THE COURT: I’ll overrule the objection.
“MR. JOHNSON: Not from this witness, Your Honor.
“THE COURT: Do you wish to cross-examine?
“MR. COLVIN: No, sir.”
The appellant cites Voudrie v. State, 387 So.2d 248, 252 (Ala.Cr.App.1980), cert, denied, Ex parte Voudrie, 387 So.2d 256 (Ala. 1980), in his brief for the proposition that “[i]n [a] homicide prosecution, threats or hostile demonstrations by the accused toward persons not connected with the deceased are not admissible.” (Emphasis added.) See also McGuff v. State, 49 Ala. App. 88, 91, 268 So.2d 868, 871, cert. denied, 289 Ala. 746, 268 So.2d 877 (1972). “However, where their connection with the offense sufficiently appears, evidence of prior difficulties between [the] accused and a third person is admissible to show malice, premeditation, or general state of mind_” 40 C.J.S. Homicide, § 209 (1944). (Emphasis added.)
It is the opinion of this court that Michael Heliums was sufficiently connected to the deceased to render the testimony admissible. Not only was Michael the stepson of Dianne Heliums, but up until the time of the marital separation, the two lived in the same home, along with the appellant and the deceased’s other children as a family. There was also testimony which referred to the fact that the reason Diane Heliums left the appellant was because of her displeasure with the intimate relationship that had developed between her daughter Teresa and Michael Heliums. Thus, sufficient connection was shown.
The threats made in the ease at bar can be compared to the threats made in Balentine v. State, 339 So.2d 1063, (Ala.Cr.App.), cert. denied, 339 So.2d 1070 (Ala.1976). That case involved a prosecution for first-degree murder allegedly motivated by the defendant’s desire to avenge his father’s death. Before ultimately killing one Joe Wright, who the defendant believed actually killed his father, the defendant made threats against J.V. Odum and Mavis Bal-entine. J.V. Odum was Joe Wright’s brother-in-law and Mavis Balentine, J.V. Odum’s new girlfriend, was the defendant’s stepmother. This court found that there was sufficient connection between Mr. Odum and Ms. Balentine with the deceased to hold that it was not error to allow the State to prove the threats made by the defendant.
Moreover, the court in Voudrie, supra, 387 So. at 252, held that “[a]ny fact which tends to prove the real motive of the defendant for killing the deceased is relevant evidence.” The testimony in question in the case at bar related to the marriage of the appellant and Mrs. Heliums. It tended to show a possible motive by the appellant to kill his wife, i.e., the appellant’s “wrecked” marriage.
This principle of law was relied on in Gregg v. State, 17 So. 321, 106 Ala. 44 (Ala.1895), overruled on other grounds, 142 Ala. 287, 38 So. 268 (1904). In that case, the defendant was convicted of the second degree murder of her daughter’s newborn infant. The daughter testified at trial that her mother asked her if she was pregnant and told her that if she was, she would kill her. The Supreme Court of Alabama held *615 that it was not error to allow such testimony from the daughter. It tended to show a possible motive by the defendant to kill her infant grandchild, i.e., the defendant’s disapproval of her daughter’s pending motherhood.
Assuming, arguendo, that the admission of the testimony was error, it was at most error without injury, as it does not appear that the error complained of has probably injuriously affected any substantial right of the appellant. Johnson v. State, 484 So.2d 1121 (Ala.Cr.App.1985); Rule 45, Alabama Rules of Appellate Procedure. This is especially true in light of the fact that the evidence of the appellant’s guilt is strong. He admitted on more than one occasion, and to more than one person, that he was guilty of murdering Diane Heliums and Sadie Milligan.
II
The second argument advanced by the appellant is that the trial court erred in denying defense counsel’s motion to strike and motion for a mistrial made in response to the cross-examination by the prosecution of character witness Donny Heliums. He is an Arkansas resident and the younger brother of the appellant. He testified on direct examination that the appellant’s reputation for peace and quiet was “pretty good.” When asked about the appellant’s reputation for telling the truth, he replied, “He’s always been honest with me.”
The following colloquy occurred during the cross-examination of Donny Heliums:
“Q Mr. Heliums, you know his reputation in Arkansas as well as here; right?
“A Yes, sir.
“Q All right. Have you ever heard that his girlfriend up there was killed, stabbed to death?
“A I was in the Navy when that took place.
“Q You’ve heard that she was stabbed to death there in Arkansas; didn’t you? “A Yes, sir.
“Q Do you think that helped his reputation?
“A I don’t know. I don’t know if it helped or hurt either one under the circumstances. You don’t know what circumstances was there, you know.
“MR. HOLLINGSWORTH: Your Hon- or, we’re going to object.
“MR. COLVIN: The witness has already stated he has no knowledge of that.
“MR. JOHNSTON: No further questions.
“THE COURT: He stated he heard it. I overrule the objection.
“MR. JOHNSTON: Nothing further, Your Honor.
“MR. COLVIN: You can come down.
“Could we have about two minutes, Your Honor?
“THE COURT: Yes.
“(Recess.)
“MR. HOLLINGSWORTH: Your Hon- or, subject to us making a couple of objections on the record, we rest. “MR. JOHNSTON: We’ve completed our rebuttal, I think, Your Honor, but suppose we give the jury some time and just take this few minutes before twelve to see what motions we have and then maybe we will be ready to argue right after lunch.
“THE COURT: You can be in recess until one o’clock. Recall my instructions to you concerning any discussion of the case while you’re away from here at lunch.
“(Jury not present.)
“MR. COLVIN: As to the testimony of Donny Heliums, we move for a mistrial on the grounds that the highly prejudicial effect of the testimony elicited from the witness as to any prior instance or assaults or murders done in Arkansas on the defendant’s ex-wife and that that’s not material and it’s prejudical to the defendant to have that introduced and move to strike it. “THE COURT: He did testify as to his reputation for peace and quiet; didn’t he?
“MR. COLVIN: He did.
*616 “MR. JOHNSTON: Yes, sir, and I asked him if he knew that in Arkansas as well as here.
“MR. HOLLINGSWORTH: He answered no, too. I wasn’t there is what he said.
“MR. JOHNSTON: No, sir, he said he knew his reputation, but—
“MR. HOLLINGSWORTH: He said he wasn’t there when all that took place. “THE COURT: He would not have been able to testify that he knew. “MR. HOLLINGSWORTH: There’s no connection between Johnny Heliums— “THE COURT: This must be hearsay testimony, all of this must be hearsay testimony, even though we’ve had people testify incorrectly to their personal knowledge. Character evidence is by its nature and must be hearsay.
“MR. HOLLINGSWORTH: But to be character evidence doesn’t it have to be connected somehow or another with a person whose character is in question?
“MR. JOHNSTON: You can impeach a character witness by asking him if he’s heard of specific instances of bad action or character by the person whose character he’s vouching for and that’s what I asked.
“MR. COLVIN: I agree, but he asked the witness about an incident that happened to somebody else and in which the defendant was not involved. You just asked about a former relation of the defendant that had had something bad happen to her and the jury is going to be left with the impression— “MR. JOHNSTON: Why didn’t you ask him about it?
“MR. COLVIN: He already stated he didn’t know about it, he was gone. “MR. JOHNSTON: He answered he had heard about it. You ask him what he heard.
“MR. COLVIN: Can we just interpose that objection and make that motion? “MR. HOLLINGSWORTH: I did object, Your Honor, if you recall at the time that was said and you overruled.
“(Lunch.)”
The trial court never actually ruled on either of the motions. Without an adverse ruling on the motion to exclude or motion for a mistrial, this court is not presented with an issue to consider on appeal. Breedlove v. State, 482 So.2d 1277 (Ala.Cr. App.1985); Hunt v. State, 453 So.2d 1083 (Ala.Cr.App.1984).
Based on the foregoing, the judgment of the trial court is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.