Jimmy Junior Gray, the appellant, was indicted for robbery in the first degree, in violation of § 13A-8-41, Code of Alabama 1975. The jury found him "guilty as charged in the indictment." The trial judge sentenced him to life imprisonment without parole, pursuant to the Habitual Felony Offender Act.
On January 7, 1987, Sheriff Prince Arnold and Deputy Sheriff Earnest Evans of Wilcox County, Alabama, were transporting Lee Marvin Williams and this appellant from the county jail. Arnold was armed with a Smith and Wesson .38 pistol and Evans had a Smith and Wesson .357 magnum pistol. At some point, Williams and the appellant escaped from the sheriff's custody and fled in the sheriff's car.
On January 8, 1987, about 4:00 to 4:30 a.m., Ezell Nickson was stopped by a car with flashing blue lights at the intersection of Interstate Highways 1-20 and 1-59, in Birmingham, Alabama. After pulling over, Nickson got out of the car. Nickson was approached by a passenger from the car with the blue lights. When Nickson noticed that the person was not a uniformed officer, he asked the person for identification and asked for it twice. When Nickson asked a third time, this person pulled out a pistol, pushed it it against Nickson's stomach, said, "This is my I.D.," and told him to get into the car with the blue lights.
The passenger then started pulling on Nickson, trying to force him into the back seat of the car. The driver got out of the car, opened the trunk, and yelled to the passenger to shoot Nickson. The driver then proceeded to transport items from the car with the blue lights to Nickson's car. During the scuffle, Nickson fell to the ground.
At some point Nickson got up and ran for assistance. He later returned to the scene with Jeff Loebler, a police officer with the Birmingham Police Department. They discovered that Nickson's car was gone and they found the Wilcox County sheriff's car.
On January 27, 1987, the Port Authority Police in the borough of Manhattan, New York City, arrested this appellant for a separate offense. When they arrested him, they found a gun in his possession. This gun was believed to be one of the guns used in the robbery of Nickson. Although there was substantial testimony concerning a Smith and Wesson .38 and a Smith and Wesson .357 magnum, no such weapon was admitted into evidence.
 I
The appellant contends that the trial court improperly denied his motion to suppress an in-court identification of him. He argues that the identification was tainted and was unreliable.
On April 17, 1989, a hearing was held on the appellant's motion to suppress the identification of him and as identification of his co-defendant, Williams. Ezell Nickson identified the appellant as the person who pulled the gun on him and as the passenger in the vehicle that stopped him. He stated that he talked to the appellant for approximately two or three minutes and was looking at the appellant during the entire time. Nickson was not able to identify the driver, thus, the case against Williams was dismissed.
On cross-examination, Nickson testified that, after the robbery but on the same *Page 383 
day, the police contacted him and he was told by a police officer that the appellant and Lee Marvin Williams had committed the robbery.
On January 9, 1987, one day after the incident, Nickson read a newspaper article about the robbery. The article included the pictures and names of the appellant and Williams.
The appellant argues that because Nickson saw the appellant's name and picture in the newspaper, his in-court identification was the result of undue suggestion. We do not agree.
The in-court identification might be found to be the result of undue suggestion if the picture in the newspaper had been the only basis for Nickson's identification of the appellant. However, even if it were, Nickson had an independent basis for his identification. Nickson's identification was based upon his opportunity to observe the appellant during the robbery. Nickson testified that he had approximately two to three minutes to observe the appellant during the robbery and that he was looking at the appellant's face the whole time. Moreover, Nickson stated that he identified the appellant because he was the person who robbed him, not because of the pictures that appeared in the newspaper.
"When an in-court identification of the accused is shown to have a basis independent of any pre-trial identification, then it is properly admitted into evidence." James v. State,549 So.2d 562, 565 (Ala.Cr.App. 1989); Mullis v. State,545 So.2d 205, 209 (Ala.Cr.App. 1989); Clements v. State, 521 So.2d 1378,1382 (Ala.Cr.App. 1988). It is clear that Nickson's identification was not based on the photograph in the newspaper, but was based on his opportunity to observe the appellant at the time of the incident.
Thus, we find that the in-court identification of the appellant was properly admitted into evidence.
 II
The appellant next contends that he was prejudiced because the jury was allowed to view two guns which were not admitted into evidence. There was also substantial testimony about these guns before the jury. The appellant objected to testimony about the guns on at least three separate occasions.
During the testimony of Sheriff Prince Arnold, the following occurred:
"Q Were you armed?
"A Yes, sir, I was.
"Q What type weapon did you have?
"A It was a Smith and Wesson .38.
"Q Was that your personal weapon, sir?
"A Well, the County, it was a County weapon.
"Q And Deputy Evans: was he armed?
 "A No, sir, not at that time. His weapon was in the vehicle.
 "MR. GOMANY: Judge, I'm going to object at this point to any of this business about guns being identified or even asked about in front of the jury, and make a motion that it's inadmissible, not relevant, and it's improper to introduce or show at this point.
"THE COURT: Overruled." (R. 75-6.)
Also, the appellant objected prior to the testimony of Detective Gibson and Detective Loesch. Appellant's counsel stated in his objection to Detective Gibson's testimony:
 "MR. GOMANY: Judge, for the record, we would make the same objection to any testimony elicited by Mr. Gibson. It's irrelevant, immaterial, prejudicial; does not pertain to this case, got nothing to do with this incident that occurred in Alabama in January.
"THE COURT: Overruled." (R. 106-7.)
After the guns were identified, the State attempted to establish a proper chain of custody of the guns. At the close of the State's evidence, the trial court did not admit the guns at issue into evidence.
In the present case, there is no showing that the appellant was unduly prejudiced by the jury's viewing the weapons. InBenford v. State, 435 So.2d 1327 *Page 384 
(Ala.Cr.App. 1981), the appellant argued that because the jury had an opportunity to view a weapon and a glove, which were not admitted into evidence, he was entitled to a mistrial. This court, however, was not persuaded that the action resulted in any prejudice to the appellant, nor are we persuaded in the instant case that the appellant was prejudiced.
 "An error that might have been prejudicial in a close case does not require reversal when the evidence of the defendant's guilt is strong. Further, in such a case the defendant must show that the trial court's error was, in fact, prejudicial to him. Moreover, before a criminal conviction is to be reversed, it must appear to the court that the error complained of has probably injuriously affected the substantial rights of the defendant."
Johnson v. State, 484 So.2d 1121, 1123-24 (Ala.Cr.App. 1985), see cases cited therein.
Therefore, we find that the appellant was not prejudiced by the jury's seeing the guns, although they were never admitted into evidence.
 III
The appellant also asserts that the prosecutor made improper comments during closing arguments about a weapon that was not admitted into evidence.
The following occurred during the prosecutor's closing argument:
 "MR. ANDERSON: They found out he was over at the Carter Hotel and went over there, and found him inside the Carter Hotel room. They found a pistol —
 "MR. GOMANY: Judge, I'm going to object to that. It was never introduced or accepted into court as evidence.
"THE COURT: Overruled." (R. 185.)
"While in argument to the jury, counsel may not argue as a fact that which is not in evidence; nevertheless, he may state or comment on proper inferences from the evidence and may draw conclusions from the evidence based upon his own reasoning."Sasser v. State, 494 So.2d 857, 859 (Ala.Cr.App. 1986); Sandersv. State, 423 So.2d 348, 351 (Ala.Cr.App. 1982).
The prosecutor's argument stating that a weapon was found in the room where the appellant was found is clearly supported by the evidence at trial. There was testimony from Detective Loesch and Detective Gibson that a weapon was found in the place where they found the appellant. (R. 105, 109.) The dispute concerning the weapon was over its identity rather than whether a weapon was found in the room. The trial court properly overruled the appellant's objection, because the prosecutor's arguments were based on facts established at trial.
For the reasons stated above, this cause is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur.