**STATE of Minnesota, Respondent,**

v.

**Alfredo Rodriguez MALDONADO,
Appellant.**

**No. 81–497.**

Supreme Court of Minnesota.

July 30, 1982.

John E. Mack and Bradley G. Junkermeier, New London, for appellant.

Warren Spannaus, Atty. Gen., Gary Hansen and Richard D. Hodsdon, Sp. Asst. Attys. Gen., St. Paul, Steve Drange, County Atty., Litchfield, for respondent.

PETERSON, Justice.

Defendant was found guilty by a district court jury of charges of possessing marijuana and possessing marijuana with intent to distribute, and was sentenced by the trial court to 20 months in prison, with execution stayed for 5 years on condition that defendant spend the first 5 months of probation in jail.[1] Defendant, who apparently is free on bond pending appeal, contends on appeal (1) that the omnibus court erred in denying his

motion to suppress the marijuana on Fourth Amendment grounds and (2) that the evidence that he possessed the marijuana was legally insufficient. We affirm.

In March of 1980 Charles Schrum, who is an investigator with the Litchfield Police Department, was in frequent contact with an informant whose identification was known to him but is not known to us. This informant gave him information concerning events in a certain apartment in Litchfield that was later identified. On three occasions this informant, whom Schrum had never caught lying, made controlled buys[2] of marijuana for him. On one occasion, after going to a residence to try and make a buy, the informant returned with information that the person with whom the informant had dealt, an employee of the Jennie-O plant in Litchfield, had provided the informant with information that he or she got his or her marijuana from someone who regularly sold marijuana to Jennie-O employees near the plant on Friday afternoons.

At noon on Friday, March 28, 1980, within a week or two after receiving this information, Schrum received a call from the informant, who claimed to have just talked with someone in the railroad lot near the Jennie-O plant and that the party had said he was about to buy marijuana from three "Mexican males" he pointed to in an orange and white Chevy pickup. Incidentally, Schrum described this "someone" that the informant had just talked to as a "known seller."

Schrum, who was in uniform, called his brother, who is also a Litchfield police officer. Schrum asked his brother, who was off duty at the time, to drive in his own car past the Jennie-O plant and report what he saw. The brother did this, and saw the

1. The Minnesota Sentencing Guidelines specify a presumptive sentence of 20 months stayed for this offense (severity level II by one with a criminal history score of four) which apparently is defendant's criminal history score.

2. A "controlled buy" involves giving money to the informant, who is searched before and after making contact with a suspected seller. Police

observe as much of the transaction between the buyer and seller as possible. *See State v. Hawkins*, 278 N.W.2d 750, 751 (Minn.1979). The informant made three actual controlled buys. On other occasions controlled buys were attempted but the suggested seller was not home or did not have any marijuana or for some other reason did not make a sale.

orange and white pickup with four men in it, all of whom appeared to be of Mexican origin. The brother then met Schrum and Officer Klitzle a couple of blocks away, and Schrum then decided to move in and search the truck.

The three officers, each in his own car, then drove up to the truck. Only one of the three cars was marked. As they approached, they caught the attention of the occupants of the truck. The three passengers got out on the passengers' side and appeared to be leaving hurriedly; defendant, the owner of the truck, got out on the driver's side and, leaving the door open, also began to walk away quickly.

Schrum ordered them all to stop, and they did. He then explained to defendant, who admitted owning the vehicle, that he was going to search it. Before entering the vehicle he saw in open view, sticking out from under the driver's seat, an unsealed brown paper bag. Schrum then seized and opened the bag, finding inside it 16 plastic bags, each containing ½ to 1 ounce of marijuana.

All four men—defendant and Ramon Leyva, Crispin Rodriguez, and a man named Jimenez—were arrested and booked. No marijuana and an insignificant amount of cash was found on defendant's person. Police found one bag of marijuana on Rodriguez and one bag on Leyva but none on Jimenez. On Rodriguez they also found $168 in cash.

Rodriguez, who, like defendant, is from Willmar, told police that he had seen defendant sell marijuana on three or four different occasions and that on this occasion defendant asked him to accompany him to Litchfield for the purpose of selling some more. He claimed that defendant had given him the bag that police found on his person but that on other occasions he had bought marijuana from defendant. He stated that defendant was selling the marijuana for $35 to $45 a bag.

Rodriguez, who was called as a state's witness at trial, admitted knowing defendant and testified that any money he had on his person was from his employer. He

claimed no recollection of what he told police and testified that he may have lied. He also claimed no recollection of how he got the bag of marijuana taken from him. Following his testimony, Schrum testified concerning the contents of Rodriguez's statement to police. He also testified that 3 weeks before trial Rodriguez had reaffirmed the truth of his statement.

Notwithstanding the trial court's ruling that his credibility could not be impeached by prior convictions, defendant chose not to testify. In closing argument defense counsel argued simply that the state had failed to establish that defendant possessed marijuana and suggested that the evidence pointed to Rodriguez's guilt, not defendant's guilt. The jury disagreed and found defendant guilty as charged.

1. Defendant's Fourth Amendment argument is two-fold: that there was no probable cause to search and that, even if there was, police should have gotten a warrant before searching either the truck or the bag found inside the truck.

■ (a) The issue of whether there was probable cause requires the use of the two-pronged analysis applied in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). That is, since the searching officer's assessment of probable cause was based on hearsay information, we must decide whether the record established that the informant obtained his information in a reliable way and that the informant was credible or his information reliable. *State v. Boerner*, 260 N.W.2d 564, 566 (Minn.1977).

■ Since the police did not try to establish that the informant was a so-called citizen informer—that is, an ordinary citizen with no connection with the criminal underworld—the credibility of the informant could not be presumed. One of the common ways of establishing the veracity of an informant such as the one in this case is by showing that he had a reliable track record as an informant.

In this case, it appears that Schrum relied on the informant's information in determin-

ing when to try to make controlled buys. Further, he had not just used the informant on one such attempt but used him on a number of occasions, three of which resulted in buys. The informant also had provided some sort of information about activities going on at a certain Litchfield apartment and Schrum himself had verified this information. Finally, Schrum had used the information over a period of several weeks without catching the informant in any untruths. While it is true that none of the controlled buys led to arrests, that apparently was not because of any problem with the information, but resulted from the prosecutor's belief that once they had caught defendant they had eliminated the source of Litchfield's marijuana problem. We believe that the record establishes that Schrum was justified in concluding that the informant was being honest with him.

One item of information bearing on the reliability of the information that the informant relayed to Schrum and bearing on the credibility or reliability of the sources of that information was the information that marijuana was being sold to employees of the Jennie-O plant on Friday afternoons outside the plant. The informant obtained this information from one of the people from whom he made one of the controlled buys. This person apparently was an employee at Jennie-O and claimed to have bought the marijuana from this party that was selling the marijuana on Friday afternoons. Thus, it would seem that the information was obtained by the informant's seller in a reliable manner. The real issue is whether this person was telling the truth to the informant. We believe that this person's credibility with respect to this information was established by the fact that the statements were against his or her penal interest. *See State v. Wiberg*, 296 N.W.2d 388, 395 (Minn.1980).

Whether Schrum also could rely on the information relayed to him around noon on March 28, 1980, requires a similar analysis. This person's credibility on this occasion was sufficiently established by the fact that his statement to Schrum was in the form of a statement against interest. The more

difficult issue is whether this person's information that he would get marijuana from the people in the truck was obtained in a reliable manner. We believe that Schrum was justified in concluding that the information was obtained in a reliable manner. Schrum knew that this person was a seller of marijuana and he also knew from the informant that marijuana was being sold in the area on Friday afternoons. He therefore reasonably believed that this person had a substantial basis for believing that he was going to be able to buy marijuana from someone in the truck.

In addition to the information that he obtained from the informant, Schrum also knew, from the observations of his brother, that there was indeed an orange and white pickup in the Jennie-O lot and that there were four men in it. The fact that there were four men in it was significant, because that suggested that the man with whom the informant had spoken knew what he was talking about and was actually making a buy. The fact that the truck was in the Jennie-O lot was of obvious significance, as was the fact that it was Friday afternoon.

Basing his assessment on all of this information, Schrum made the decision to move in and search. We believe that Schrum already had probable cause at that point, but we note that by the time the search actually had begun Schrum had even more information. Specifically, by the time the search began he also knew that defendant and the others had left the vehicle hurriedly when they saw the police, and he also knew that there was a paper bag, in open view, sticking out from under the driver's seat. Given all of this information, we believe that Schrum clearly was justified in concluding that he had probable cause to search.

(b) Defendant next argues that even if there was probable cause to search, the police still should have obtained a warrant to search the truck and/or the bag. There is no merit to the argument that a warrant was needed to search the truck. The so-called motor vehicle exception to the

search warrant requirement justifies the warrantless search of motor vehicles in which police reasonably believe there is contraband or evidence of crimes. The omnibus court's decision that the search of the bag did not require a warrant is supported by the United States Supreme Court's recent decision in *United States v. Ross*, —— U.S. ——, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

2. The only other issue is the sufficiency of the evidence that defendant possessed the marijuana. We hold that the evidence was sufficient. Evidence connecting defendant to the marijuana included the testimony that he started to flee when police approached, the evidence that the truck was his, the evidence that he was in the driver's seat, and the evidence that the bag of marijuana was found sticking out from under the driver's seat.[3]

Affirmed.

---

3. Rodriguez' statement was not given under oath and therefore was technically admissible only as impeachment evidence, and the trial court so instructed the jury.