[Nos. 12258-8-II; 12302-9-II. Division Two. January 17, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. SHERRI ESTORGA, *Appellant.*

THE STATE OF WASHINGTON, *Appellant,* v. DONALD FRANK QUACKENBUSH, *Respondent.*

*Jeffrey Steinborn* and *James L. Carbone,* for appellant Estorga.

*Chris L. Matson,* for respondent Quackenbush.

*Arthur D. Curtis, Prosecuting Attorney,* and *Michael C. Kinnie, Deputy,* for the State.

PETRICH, J.—In consolidated trials, jury verdicts of guilty for the manufacture of marijuana and for the possession of marijuana were returned against Sherri Estorga and Donald Quackenbush. Thereafter, Quackenbush's conviction of possession was merged into the conviction for the manufacture of marijuana. His verdict was vacated and a new trial ordered because the trial court concluded that a hearsay statement lacking the required indicia of reliability had been introduced against him and had violated his right to confront the declarant. The trial court ruled that as to Estorga, the introduction of the hearsay statement was harmless error. Judgments were entered against Estorga for both offenses.

Estorga appeals, claiming that evidence obtained pursuant to the search warrant should have been suppressed because the supporting affidavit failed to establish the veracity of the informant. In the alternative she claims that

the information supplied by the informant was in violation of the informant's rights protected by article 1, section 7 of the Washington Constitution. The State appeals the grant of a new trial to Quackenbush, claiming that his right to confront the hearsay declarant was not abridged.

Two issues are presented in Estorga's appeal. The first is whether the named informant's statement in support of an application for a search warrant, which implicates the informant in the criminal activity and which was given in exchange for a promise of leniency, demonstrated the informant's veracity as required by *Aguilar–Spinelli*.[1] The second is whether Estorga may successfully assert a violation of the informant's right to privacy protected by article 1, section 7 of the state constitution so as to exclude evidence against her. The issue presented in the State's appeal is whether the introduction of the hearsay statement of a declarant, unavailable for trial, that arguably lacks the special indicia of reliability required to satisfy the right of confrontation, violates that right when the declarant testified and was subject to cross examination at an earlier suppression hearing attended by the defendant.

We conclude that the named informant's statements satisfy the veracity requirement of *Aguilar–Spinelli* and that Estorga is not entitled to the exclusion of evidence purportedly seized in violation of another's privacy rights as protected by article 1, section 7 of the state constitution. We also conclude that Quackenbush's right to confront the unavailable declarant was satisfied by the fact that Quackenbush was present with his attorney at an earlier proceeding when the declarant was under oath and there subject to

---

[1]Probable cause based on an informant's tip to justify the intrusion of the privacy rights protected by article 1, section 7 of the state constitution requires that the affidavit in support of a search warrant established the basis of information and credibility of the informant as articulated in *Spinelli v. United States*, 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969) and *Aguilar v. Texas*, 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964); and adopted by the Washington Supreme Court in *State v. Jackson*, 102 Wn.2d 432, 433, 688 P.2d 136 (1984).

cross examination. Accordingly, we affirm Estorga's conviction and reverse the grant of a new trial for Quackenbush.

The Clark County Sheriff's office received an anonymous tip of a major marijuana grow operation in that county. Undersheriff Songer had been told that Charles Knight and his girl friend, Kimberly Moore, had knowledge of the operation and knew who the major participants were.

Undersheriff Songer contacted Ms. Moore on the pretense of an unrelated forgery charge pending against her in which she had requested representation by an attorney. He advised Moore of her *Miranda* rights.[2] Instead of discussing the pending charge, Songer asked Moore about the marijuana grow operation and the identity of its operators. Moore ultimately provided information that became the basis of a warrant for the search of Charles Knight's residence.

According to Knight, the search was superficial. As soon as Songer located amphetamines and marijuana of the type and in the location that Moore had described, the search ceased. Songer told Knight that he wanted information regarding the marijuana grow operation and, in exchange, Songer would not charge Knight with possession of the amphetamines or marijuana. Knight was taken to the sheriff's office. There, with the approval of the prosecuting attorney, an "Agreement of Understanding" was entered into whereby in exchange for information concerning the grow operation and cooperation in the form of testimony, if necessary, Knight would not be charged or prosecuted for his involvement in the operation or for possession of contraband seized at his residence. Knight gave an unsworn statement to Songer that was electronically recorded. Knight's statement implicated both Quackenbush and Estorga, as well as himself in the grow operation. Quackenbush was identified as the one conducting the operation, while Estorga kept records and resided on the premises.

---

[2]*Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

Songer relayed the facts described by Knight to the magistrate by a sworn statement. The magistrate issued a search warrant, having determined that probable cause of criminal activity existed and that contraband would be then located on the premises.

After a pretrial hearing, defendants' motions to suppress were denied. The seized evidence was introduced at trial. Knight was unavailable at trial and his statement to Songer was admitted over objection.

## ESTORGA—VALIDITY OF SEARCH WARRANT

Issuance of a search warrant is a matter of judicial discretion and the magistrate's determination of probable cause is to be reviewed only for an abuse of that discretion. *State v. Smith,* 93 Wn.2d 329, 610 P.2d 869, *cert. denied,* 449 U.S. 873 (1980). Great deference is given to the magistrate's determination of probable cause. *State v. Seagull,* 95 Wn.2d 898, 907, 632 P.2d 44 (1981).

Estorga's initial challenge to the search warrant focuses on the "veracity of the informant" requirement of the *Aguilar–Spinelli* test. She points out that the affidavit in support of the search warrant is devoid of any showing of Knight's reliability. She claims all that remains is Knight's identity and his own involvement in criminal activity. She acknowledges that a statement against penal interest may lend some credibility to the declarant's statement but contends that such a theory should not be applied indiscriminately. She argues that Knight's statements as relayed to the magistrate, purporting to be against his penal interest, lend nothing to his credibility. She argues that Knight had no reason to believe that his statements would ever be used against him. She contends that if a marijuana operation as described in his statement was found, that would be the end of Knight's liability. On the other hand, if none existed, there would be no basis for a prosecution absent some corroboration of his confession pursuant to the corpus delicti rule. Thus, she contends Knight's purported self–

incrimination affords no inducement to be truthful and his veracity was not established. We disagree.

█ In reviewing a probable cause determination to support a warrant, the information to be considered is what was available to the issuing magistrate. *State v. Patterson,* 83 Wn.2d 49, 55, 515 P.2d 496 (1973).[3] Even though little or nothing is known about the informant, the facts and circumstances under which the information was furnished may reasonably support an inference that the informant is telling the truth. *State v. Lair,* 95 Wn.2d 706, 710, 630 P.2d 427 (1981).

██ Although a statement against penal interest to a police officer alone may add little or nothing to the informant's credibility, it nevertheless is a factor to be considered. *State v. Hett,* 31 Wn. App. 849, 851, 644 P.2d 1187, *review denied,* 97 Wn.2d 1027 (1982). Identity of the informant is another factor favoring reliability of the informant. *State v. O'Connor,* 39 Wn. App. 113, 120, 692 P.2d 208 (1984), *review denied,* 103 Wn.2d 1022 (1985). Furthermore, greater reliability may be attached to admissions against penal interest in postarrest situations because the arrestee admitting the crime risks disfavor with the prosecutor if he lies. *United States v. Davis,* 617 F.2d 677, 693 (D.C. Cir. 1979). Potential risk of disfavor is heightened and consequently a higher motive to be truthful exists

---

[3]Estorga, out of an abundance of caution, has assigned error to the trial court's findings and conclusions drawn from its analysis of the affidavit in support of the search warrant. While CrR 3.6 requires the court to enter findings and reasons for admissibility or inadmissibility of evidence sought to be suppressed, and *State v. Christian,* 95 Wn.2d 655, 628 P.2d 806 (1981), holds that unchallenged findings are verities, such principles seem inappropriate when we review validity of the warrant based entirely on the record before the magistrate. The trial court does not resolve factual conflicts but, like this court, simply determines as a matter of law whether probable cause has been established. Unless the trial court considers other matters such as whether false statements were made intentionally or in reckless disregard of the truth in support of the warrant, as in *Franks v. Delaware,* 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978) or material omissions of fact as in *United States v. Martin,* 615 F.2d 318 (5th Cir. 1980), the trial court's findings are superfluous. We review de novo the matter presented to the issuing magistrate to determine whether probable cause is established.

where the information is given in exchange for a promise of leniency. *State v. Bean,* 89 Wn.2d 467, 471, 572 P.2d 1102 (1978).

Here, the statement submitted to the magistrate identifies Knight as the informant; states that during the search of Knight's premises he was found in possession of amphetamine tablets and marijuana, which Knight had obtained that day from the grow operation; and states that Knight agreed to supply information on the grow operation in exchange for an assurance that he would not be charged or criminally prosecuted for his involvement in the grow operation or for the drugs found in his residence.

We are satisfied that these circumstances establish a strong motivation for Knight to be truthful and satisfy the requirement that the informant be credible. We doubt that Knight was sophisticated enough to realize the niceties of Estorga's argument that he was not at risk, even if his information did not result in a "seizure" of the grow operation. But even if he was, the argument ignores the fact that he could have been charged and prosecuted for the crime of possession based on the contraband seized at his residence. Motivation to tell the truth was evident.

## ESTORGA'S CHALLENGE TO ALLEGED VIOLATION OF RIGHTS OF OTHERS

█ Rights assured and protected by the Fourth Amendment are personal rights that may be enforced by exclusion of evidence only at the instance of one whose rights were infringed by the search and seizure. *United States v. Salvucci,* 448 U.S. 83, 65 L. Ed. 2d 619, 100 S. Ct. 2547 (1980); *Rakas v. Illinois,* 439 U.S. 128, 58 L. Ed. 2d 387, 99 S. Ct. 421 (1978). The interest in deterring illegal searches does not justify the exclusion of tainted evidence at the instance of a party who was not the victim of the challenged practice. *United States v. Payner,* 447 U.S. 727, 65 L. Ed. 2d 468, 100 S. Ct. 2439 (1980).

Estorga urges that the heightened protection of her right to privacy assured by article 1, section 7 calls for exclusion

of evidence against her when such evidence is tainted by the violation of the rights of Moore and Knight. She claims Moore's Sixth Amendment right to counsel was abridged when Songer questioned her in the absence of the attorney she requested in the forgery proceedings. She argues that Moore's statements were used to obtain the search warrant against Knight, that Moore's information was tainted, and that Moore's credibility was not established. As a result, she argues Knight's rights to privacy were violated. She concludes that since the search warrant against her was based on tainted evidence, the evidence seized from her premises should have been suppressed. The State counters that Moore waived her right to counsel, and that Moore's and Knight's statements were given freely and voluntarily after being advised of rights assured by *Miranda.*

We need not resolve these factual disputes, because we are satisfied that the exclusionary rule does not apply at the instance of one who was not the victim of the challenged practice. Article 1, section 7 of the state constitution has been interpreted to provide greater protection for individual rights than does the Fourth Amendment. *See State v. Jackson,* 102 Wn.2d 432, 439, 688 P.2d 136 (1984); *State v. Myrick,* 102 Wn.2d 506, 510, 688 P.2d 151 (1984); *State v. Chrisman,* 100 Wn.2d 814, 817, 676 P.2d 419 (1984); *State v. Ringer,* 100 Wn.2d 686, 690, 674 P.2d 1240 (1983).

Estorga, however, does not seek a more heightened protection for her rights than those already afforded by these cases. Rather, she seeks the application of the exclusionary rule because of a claimed violation of the rights of others. We acknowledge that article 1, section 7 has a different emphasis than does the Fourth Amendment. The emphasis of article 1, section 7 is on protecting personal rights. The Fourth Amendment emphasis is on curbing governmental action. The particular provision of article 1, section 7 mandates that "the right of privacy shall not be diminished by the judicial gloss of a selectively applied exclusionary remedy." *State v. White,* 97 Wn.2d 92, 110, 640 P.2d 1061 (1982). This principle has been firmly established in this

state. *See State v. Cyr,* 40 Wn.2d 840, 842, 246 P.2d 480 (1952); *State v. Miles,* 29 Wn.2d 921, 926, 190 P.2d 740 (1948); *State v. Buckley,* 145 Wash. 87, 258 P. 1030 (1927); *State v. Gibbons,* 118 Wash. 171, 182–88, 203 P. 390 (1922). However, in none of these cases has the remedy been employed when the one seeking the remedy has not been the victim of the challenged practice. We do not believe the remedy of the exclusion of evidence should be expanded for Estorga's benefit.

As noted in a case cited by 4 W. LaFave, *Search and Seizure* § 11.3, at 280 (1987):

> Application of the exclusionary rule in this situation would clearly serve to increase its deterrent effect on police, particularly since those seizing the evidence here are the lawful "agents" of those seeking to use the information. This is not a situation, however, where evidence unlawfully secured from an individual is being used to impose criminal sanctions against that same individual. . . . The use of the evidence in this case thus does not seriously affront basic notions of justice and fair play that form in part the foundation for the exclusionary rule. In this case, . . . appellants' interests are adequately protected by the right to pursue a civil action for damages, the right to seek return of any evidence illegally seized, and the right to exclude the evidence in any criminal proceeding directed against them.

(Citation omitted.) *United States v. Kember,* 648 F.2d 1354, 1368 (D.C. Cir. 1980).

It has not been shown that a constitutional violation against Estorga was committed. Therefore, the warrant was valid and the evidence was admissible against her. We conclude that a "target" defendant may not raise a possible violation of the rights of a third party in order to invoke the exclusionary rule.

### QUACKENBUSH'S NEW TRIAL ORDER

■ It is well settled that a motion for a new trial is directed to the sound discretion of the trial court. *Vasquez v. Markin,* 46 Wn. App. 480, 731 P.2d 510 (1986), *review denied,* 108 Wn.2d 1021 (1987). The reviewing court will not intervene unless there has been a manifest abuse of that discretion. 46 Wn. App. at 483.

The reason given for the new trial was that Knight's' taped statement was admitted into evidence over Quackenbush's objection and should have been excluded under the rationale of *State v. St. Pierre,* 111 Wn.2d 105, 759 P.2d 383 (1988); *see also* CR 59(f). In addition, the order stated that the error was not harmless since the remaining untainted evidence was insufficient to convict Quackenbush.

Under *St. Pierre* (first degree felony murder and aggravated first degree murder case with three codefendants who each gave statements, but only one of whom testified), the Washington Supreme Court continued to recognize the importance of the confrontation clause of the Sixth Amendment. "The right to confront one's witnesses is a fundamental right in our criminal justice system." 111 Wn.2d at 111. Particular concern has been expressed regarding the use of codefendant statements in criminal trials where the statements are not made under oath and the witness has not been subjected to cross examination. 111 Wn.2d at 112. Further, hearsay statements of an accomplice's confession are inherently suspect and presumptively unreliable and cannot be admitted unless they bear "'sufficient "indicia of reliability" to rebut the presumption . . .'". 111 Wn.2d at 112.

The right to confront witnesses, guaranteed by the Sixth Amendment and the Washington constitution, is *not* absolute. *State v. Slider,* 38 Wn. App. 689, 696, 688 P.2d 538 (1984), *review denied,* 103 Wn.2d 1013 (1985). It is clearly established that when the witness is unavailable, his prior testimony can be admitted at a subsequent trial consistent with the Sixth Amendment if, at the previous hearing, there was adequate opportunity to cross-examine. *State v. Solomon,* 5 Wn. App. 412, 487 P.2d 643, *review denied,* 80 Wn.2d 1001 (1971); *State v. Roebuck,* 75 Wn.2d 67, 72, 448 P.2d 934 (1968). The opportunity for cross examination is enough to satisfy the Sixth Amendment. 5 Wn. App. at 419.

The opportunity for cross examination requires that the accused be represented by counsel at the preliminary hearing when the witness appears and testifies. *Solomon,* 5 Wn. App. at 412. At the suppression hearing on March 30, 1988, both Quackenbush and Estorga were present and represented by counsel. Charles Knight was called and examined · by Quackenbush's attorney. During the State's examination of Knight, the matter of his statement which had previously been considered by the court was raised. Knight was then subject to cross examination by both defendants as to the nature and accuracy of his statement. Quackenbush had an adequate opportunity to cross examine Knight. The trial court abused its discretion by granting a new trial on that basis.

We affirm Estorga's convictions and reverse the vacation of Quackenbush's verdict and order for a new trial, and remand with instructions to enter judgment and sentence against him.

WORSWICK, C.J., and ALEXANDER, J., concur.

Review denied at 116 Wn.2d 1027 (1991).