[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 204 
The appellants, William Alvin Atwell and Donald Keith Inabinett, were charged by separate indictments with trafficking in marijuana. The cases were consolidated for trial upon motion by the State, and a jury found both appellants guilty as charged. Appellant Atwell was sentenced to six years' imprisonment and appellant Inabinett was sentenced to three years' imprisonment. Additionally, each appellant was fined $25,000. Three issues are raised in this consolidated appeal.
In its case-in-chief, the State presented evidence that, around 10:00 p.m. on March 3, 1989, Mobile County Deputy Sheriff Brian Hill received information from Deputy Harold Martin. In response to this information, Deputy Hill went to the city of St. Elmo on Highway 90 in Mobile County, where he looked for a white pickup truck with a boat in the back. Around 10:30 p.m., Deputy Hill observed a truck matching this description and began to follow it. Some two to three minutes later, Deputy Andy Earl, who was accompanied by Deputy Matthew Danzy, pulled in behind Deputy Hill. Both Hill and Earl were driving unmarked vehicles. The truck, followed by the two unmarked police cars, proceeded east on Highway 90, turned right onto Ramsey Road, and then left onto Boe Road.[1]
Approximately a quarter of a mile before reaching a sharp curve on Boe Road, the officers, acting on orders from Deputy Martin, attempted to stop the truck. Deputy Hill placed his blue light on the roof of his vehicle and, when the truck slowed down, he pulled in front. Deputy Earl also turned on his blue light, but stayed behind the truck. Deputy Hill testified that he stopped and, when the truck appeared to be stopping, he started to exit his vehicle. However, the truck suddenly pulled around him, almost running over him, and continued down Boe Road. The officers gave chase.
The truck went into the sharp curve on Boe Road at a speed of 35 to 45 m.p.h., veered into the opposite lane, then crossed its own lane, and ran off the road, before the driver righted the truck in the proper lane. Deputy Earl testified that, as the truck was negotiating this curve, he observed "a large object [being] thrown from what appeared to be the window, the passenger side of the vehicle." The chase proceeded down Boe Road, onto Old Pascagoula Road, and then onto Forts Lake Road, with the three vehicles traveling at speeds that, at times, approached 90 to 100 m.p.h. According to the officers, the truck ran several stop signs and forced several cars off the road during this chase. The officers also testified that items were being thrown out of the windows on both sides of the truck as well as out of the sliding rear window.
The high-speed chase continued until the truck pulled into the parking lot of Presley's Grab All, a convenience store located on Forts Lake Road some two and one-half miles into the State of Mississippi. Deputy Hill pulled in beside the passenger side of the truck. As Deputy Earl pulled into the parking lot, his car engine died and he exited his vehicle at that point. The officers, who were all apparently wearing Sheriff's t-shirts and jeans, approached the truck with weapons drawn, identifying themselves as deputy sheriffs. The officers testified that they did not know that they were in Mississippi at this time.
Deputy Hill went to the passenger's side and commanded the passenger (appellant Atwell) to exit the vehicle. When Atwell did so, Hill handcuffed him. Meanwhile, Deputy Earl had approached the driver's side and commanded the driver (appellant Inabinett) to exit the vehicle. According to Deputy Earl, Inabinett refused to get out of the truck. Earl attempted to pull Inabinett out and a scuffle ensued with Inabinett eventually being subdued and handcuffed. Both appellants were placed in one of the several marked police vehicles that had arrived on the scene. The appellants *Page 206 
were later transported back to Mobile County and jailed.[2]
Deputy Bruce Lee, who arrived at Presley's Grab All after the appellants had been handcuffed, and Deputy Hill retraced the chase route, looking for items that had been thrown out of the truck. Before Deputy Lee left the store to begin this search, Deputy Earl informed him (Lee) that he (Earl) had seen something thrown out of the truck at the sharp curve on Boe Road. At this curve, Deputy Lee found a brown "garbage-type sack." In this sack were five smaller, clear plastic bags, each containing "about a pound of green plant material that [Lee] identified to be marijuana." He submitted the plant material for analysis and had the plastic bags fingerprinted. On cross-examination, Deputy Lee stated that it was "about midnight" when he found this bag.
During the course of the State's case-in-chief, the jury was excused and a suppression hearing was held. Deputy Earl testified at this hearing that "[w]hen [he] approached the back of the truck, when [he] was walking up to the truck there was a small plastic container and a lid and it was laying in the back of the truck partially on the boat that was in the back of the truck." He further described this container as being "like a Tupperware container" and stated that it appeared to be the object thrown out of the back window of the truck just before the truck stopped. It is not clear whether Deputy Earl observed the Tupperware-type container before or after the appellants were arrested. However, after both appellants were handcuffed, he collected the container, which he stated was open, and the lid. Inside the container were several plastic bags containing what appeared to Earl to be marijuana and related paraphernalia. Deputy Earl then assisted with a search of the cab of the truck, during which he found a hand-rolled cigarette "in the pocket on the driver's door." Despite rigorous cross-examination by appellant Atwell's counsel as to how the open Tupperware-type container remained on the boat in the back of the speeding truck, Deputy Earl maintained that this container was found open and in plain view. He categorically denied finding it under the driver's seat during the search of the cab.
The appellants called several witnesses at the suppression hearing. Deputy Danzy stated that the Tupperware-type container was on the floorboard of the bed of the truck, not on the boat, when Deputy Earl picked it up. Sidney Isham testified that he was at Presley's Grab All on the night of this incident and observed the officers searching the back of the truck. However, he did not see any officer pick anything up at that time. Appellant Atwell testified that the officers found the Tupperware-type container under the driver's seat and that, when it was found, appellant Inabinett stated that the container was his.
The trial court suppressed the handrolled cigarette found in the cab of the truck, but denied the motion to suppress as to the other items. The State's toxicologist testified that he determined the plant material in the Tupperware-type container to be marijuana, but he never specified the weight of this material. He testified that the total weight of the plant material in the bag found by Deputy Lee was 4.9 pounds, and he identified this plant material as being "real close to marijuana."
At the close of the State's case-in-chief, both appellants made a motion for judgment of acquittal and both motions were denied. Each appellant then called witnesses in his behalf, and appellant Inabinett himself testified before the jury. Essentially, the evidence offered by the appellants was that they had nothing to do with the bag found by Deputy Lee; that they were beaten and otherwise physically mistreated by the officers at the time of their arrests; and that the Tupperware-type container was found under the driver's seat and was immediately thereafter claimed by appellant Inabinett as his property.
After both appellants rested, the State called Deputy Harold Martin, not in rebuttal, but to conclude its evidence on the *Page 207 
motion to suppress. Deputy Martin testified, over the appellants' objection and out of the presence of the jury, that, around 10:00 p.m. on March 3, 1989, he had a conversation with an informant from whom he had previously received information that proved reliable. This informant told Martin "that the driver of a white in color Chevrolet pickup truck, which had an aluminum boat in the bed of that truck would be in possession of a quantity of marijuana . . . estimated . . . to be around five pounds." The informant also told Martin that "the truck would be in the vicinity of Saint Elmo and Highway 90." The informant did not provide any other information, such as the driver's intended destination, the direction in which he would be traveling, a physical description of the driver, or the driver's name.
On cross-examination by appellant Atwell's counsel, Deputy Martin stated that his informant acquired this information in a conversation with a third party who was unknown to Deputy Martin. According to Martin, the informant saw this third person "with a quantity of marijuana that was supposedly from the driver of the white Chevrolet truck." Martin agreed with the trial court's summarization of his testimony: "[T]he informant told you that some person whose last name you don't know or can't remember, that he, the 3rd person, had purchased a quantity of marijuana from the driver of the truck and knew the driver to be in possession of other marijuana."
 I
The appellants contend that their arrests were illegal in that the Mobile County deputies had no authority to make arrests in the State of Mississippi, and that, consequently, the trial court should have granted their motions to dismiss the indictments.
The State initially argues that this issue was not preserved because appellant Atwell's motion to dismiss was filed "too late" and appellant Inabinett did not file a motion to dismiss. Appellant Atwell was arraigned on May 4, 1990, and was granted 20 days in which to file special pleas. His motion to dismiss based on the alleged illegality of his arrest should have been filed by May 24, 1990, but was not filed until May 30, 1990. See Rules 16.2(a) and 16.3(a)(1), A.R.Cr.P.Temp. (now Rules 15.2(a) and 15.3(a)(1), A.R.Cr.P.). However, the motion to dismiss was clearly an issue at trial and the State did not argue there that this motion was time barred. Therefore, the State is precluded from raising that argument on appeal. Exparte Williams, 571 So.2d 987, 989 (Ala. 1990) ("The State's failure to object to the untimeliness of [the appellant's] motion waived that objection on appeal").
Moreover, we find that this issue was preserved by both appellants. Prior to the striking of the jury, the trial judge stated: "Let the record reflect that the defendant Inabinett adopts the motions filed by defendant Atwell and the Court will consider both motions as — or will consider the motions as having been filed on behalf of both defendants." The State made no objection to this action in connection with the motion to dismiss.
It is undisputed that the appellants were actually arrested in Mississippi by Alabama law enforcement officers, that no Mississippi law enforcement officers were involved in this arrest, and that the appellants were forcibly returned to Alabama without extradition proceedings. As a general rule, "[a] peace officer, acting in his official capacity, can make an arrest only within the state from which his authority is derived, and an arrest in a foreign state is unlawful, unless it can be justified as an arrest by a private person." 6A C.J.S. Arrest § 53 (1975) (footnotes omitted). See also UnitedStates v. Wilson, 528 F. Supp. 1129, 1132 (S.D.Fla. 1982).
Under Mississippi law, a private person may make a warrantless arrest "when a felony has been committed, and he has reasonable ground to suspect and believe the person proposed to be arrested to have committed it." Miss. Code Ann., § 99-3-7 (Supp. 1990); Nash v. State, 207 So.2d 104, 106-07
(1968); Howell v. Viener, 179 Miss. 872, 176 So. 731, 733
(1937). In Part II of *Page 208 
this opinion, we conclude that the officers did have probable cause to arrest the appellants by the time they stopped the truck in Mississippi. Thus, the Alabama officers, as private persons, had grounds to stop the truck and arrest the appellants in Mississippi.[3] However, the officers failed to comply with Miss. Code Ann., § 99-3-17 (Supp. 1990), which provides that "[e]very person making an arrest" shall take the arrested person before a magistrate for a preliminary hearing "without unnecessary delay." This was clearly not done foreither appellant. However, even if the arrests were made without authority or were improperly completed due to the failure to comply with § 99-3-17, the appellants are not entitled to a dismissal of the indictments.
As the United States Supreme Court has stated: "[T]he power of a court to try a person for crime is not impaired by the fact that he ha[s] been brought within the court's jurisdiction by reason of a 'forcible abduction.' " Frisbie v. Collins,342 U.S. 519, 522, 72 S.Ct. 509, 511, 96 L.Ed. 541 (1952). See generally Annot., 25 A.L.R. 4th 157 (1983). This principle is clearly followed in this state. An illegal arrest "does not void a subsequent conviction," Raughley v. State,398 So.2d 414, 415 (Ala.Cr.App. 1981), does not bar prosecution on an indictment returned after the arrest, Coral v. State,551 So.2d 1181, 1182 (Ala.Cr.App. 1989), and does not entitle the accused to a dismissal of the charges against him, see Speers v. State,545 So.2d 247, 250 (Ala.Cr.App. 1989).
Mississippi law is to the same effect. In Roberts v. State,186 Miss. 732, 191 So. 823 (1939), the defendant was apprehended in another state by Mississippi law enforcement officers and forcibly returned to Mississippi. In addressing the defendant's contention that the court lacked jurisdiction over his person, the Mississippi Supreme Court stated: "[T]he jurisdiction of the court in the county where the crime was committed is in no way impaired by the manner in which the accused was brought before it." 186 Miss. at 734,191 So. at 823. Furthermore, the Mississippi Supreme Court has made it clear that a failure to comply with Miss. Code Ann., § 99-3-17 does not entitle a defendant to a dismissal of the indictment against him. See Dunning v. State, 251 Miss. 766, 778,171 So.2d 315, 320 (1965) (assuming there was undue delay in bringing the defendant before a magistrate as required by what is now § 99-3-17, this delay did not entitle defendant to an "outright discharge"), cert. denied, 386 U.S. 993,87 S.Ct. 1310, 18 L.Ed.2d 339 (1967). Cf. Harper v. State, 251 Miss. 699,705, 171 So.2d 129, 131 (1965) ("failure to carry [the defendant] before a judicial officer shortly after his arrest did not entitle him to a directed verdict of not guilty").
We find no error in the trial court's denial of the motions to dismiss the indictments based on the alleged illegality of the appellants' arrests in Mississippi by Alabama law enforcement officers.
 II
The appellants assert that there was no probable cause for their arrests and that, therefore, the evidence seized in the searches after these arrests should have been suppressed. We do not agree.
We note at the outset that there was no evidence admitted at trial that was the product of an actual "search" of the truck or the appellants themselves.[4] Further, we find merit in the prosecutor's argument, advanced at the beginning of the suppression hearing, that the bag found by Deputy Lee and the Tupperware-type container *Page 209 
were admissible under the theories of abandonment and plain view.
The bag of marijuana found by Deputy Lee on Boe Road was clearly abandoned when thrown from the window of the fleeing truck. United States v. McLaughlin, 525 F.2d 517, 519-20 (9th Cir. 1975), cert. denied, 427 U.S. 904, 96 S.Ct. 3190,49 L.Ed.2d 1198 (1976); Jackson v. State, 654 P.2d 1057, 1058
(OkLa.Cr.App. 1982). See also 1 W. LaFave, Search and Seizure § 2.6(b) at 466 (2d ed. 1987). We recognize that abandonment of an item as a result of illegal police conduct is not a voluntary abandonment for Fourth Amendment purposes. See Lewisv. State, 518 So.2d 214, 217 (Ala.Cr.App. 1987). We hold, however, that the attempted stop of the truck on Boe Road was not illegal.
As the State argues, investigatory stops may be conducted by law enforcement officers on the basis of reasonable suspicion,Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889
(1968), which "is a less demanding standard than probable cause," Alabama v. White, 496 U.S. 325, ___, 110 S.Ct. 2412,2416, 110 L.Ed.2d 301 (1990).
 "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.. . . Reasonable suspicion, like probable cause, is dependent upon both the content of the information possessed by police and its degree of reliability. Both factors — quantity and quality — are considered in the 'totality of the circumstances — the whole picture,' that must be taken into account when evaluating whether there is reasonable suspicion."
Alabama v. White, 496 U.S. at ___, 110 S.Ct. at 2416 (emphasis added) (citations omitted).
Information from a tipster may provide reasonable suspicion to support an investigatory stop, whether the tipster is known and reliable, see Adams v. Williams, 407 U.S. 143,92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), or even where the tipster is anonymous, see Alabama v. White, 496 U.S. at ___,110 S.Ct. at 2417. The same factors used to determine whether a tipster's report establishes probable cause are also "relevant in the reasonable suspicion context, although allowance must be made in applying them for the lesser showing required to meet that standard." Alabama v. White, 496 U.S. at ___,110 S.Ct. at 2415.
 "Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), dealt with an anonymous tip in the probable cause context. The Court there abandoned the 'two-pronged test' of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723
(1964), and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), in favor of a 'totality of the circumstances' approach to determining whether an informant's tip establishes probable cause. Gates made clear, however, that those factors that had been considered critical under Aguilar and Spinelli — an informant's veracity,' 'reliability,' and 'basis of knowledge' — remain 'highly relevant in determining the value of his report.' 462 U.S., at 230, 103 S.Ct. at 2328. These factors are also relevant in the reasonable suspicion context, although allowance must be made in applying them for the lesser showing required to meet that standard."
Alabama v. White, 496 U.S. at ___, 110 S.Ct. at 2415.
Here, Deputy Martin acknowledged that while the information regarding the white truck was provided to him by a known and reliable informant, the information actually came from a third person who was totally unknown to Deputy Martin. The deputy's information was double hearsay.
It is well settled that "hearsay-upon-hearsay may be utilized to show probable cause," 1 W. LaFave, Search Seizure § 3.2(d) at 580 n. 100 (2d ed. 1987), as long as there is a substantial basis for *Page 210 
crediting the hearsay "at each level." United States v. Spach,518 F.2d 866, 869 (7th Cir. 1975). Where there are two levels of hearsay, there should be a "means of assessing the credibility of both the individual who spoke with the [officer-affiant] as well as a means of assessing the initial source of the information." State v. Niehaus, 452 N.W.2d 184,190 (Iowa 1990).
The credibility of the confidential informant with whom Deputy Martin spoke was established by the deputy's testimony that he had received information from that informant "more than half a dozen times" and that he "had been able to verify the information as being true and accurate." See Rickman v. State,361 So.2d 22, 24 (Ala.Cr.App.), reversed on other grounds,361 So.2d 28 (Ala. 1978) (officer received "information on numerous occasions which had been checked out and proved to be correct"). Deputy Martin's confidential informant also revealed how he gained his information: he saw marijuana in the possession of an unnamed third party who claimed to have purchased the marijuana from the driver of the white truck.
Here the first level of hearsay satisfied both the veracity and basis of knowledge prongs of the Aguilar-Spinelli test. The real issue, of course, is whether there was any basis for crediting the second level of hearsay, the information supplied by the unnamed third party.
We think there was. First of all, unlike the information relayed by the tip in Stanfield v. State, 529 So.2d 1053
(Ala.Cr.App. 1988), which this Court observed "could easily have been obtained from an offhand remark heard at a neighborhood bar," Stanfield, 529 So.2d at 1057 (quotingSpinelli v. United States, 393 U.S. at 417, 89 S.Ct. at 589), the information relayed to Deputy Martin's informant was based upon what the informant had seen and heard. The informant saw
marijuana in the possession of the third party. This fact is significant because it proves the third party was not passing along mere gossip or unsubstantiated rumor, at least regarding the fact that he had obtained marijuana from someone.
"Even though little or nothing is known about the [unnamed third party] informant, the facts and circumstances under which the information was furnished may reasonably support an inference that the informant [was] telling the truth."State v. Estorga, 60 Wn. App. 298, 803 P.2d 813, 817, review denied, 116 Wn.2d 1027, 812 P.2d 102 (1991). One circumstance to be considered is the fact that the information furnished constituted a statement against the declarant's penal interest.Estorga, 803 P.2d at 817; State v. Erwin, 789 S.W.2d 509, 511
(Mo.App. 1990) (an admission against penal interest "carries its own indicia of reliability"); State v. Davis, 133 N.H. 211,575 A.2d 4, 6 (1990) (opinion of Souter, J.) ("some degree of support accrues even to an unnamed . . . informer who makes admissions against his own penal interest"). The "[v]eracity of an informant may be proved in the double hearsay situation if the statement can be shown to be a declaration against penal interest." State v. Malkin, 678 P.2d 1356, 1359 (Alaska App. 1984), reversed on other grounds, 722 P.2d 943 (Alaska 1986).
Of course, it was possible that the third party bought the marijuana from someone other than the driver of the white truck and was falsely accusing these appellants. However, the circumstances under which the third party furnished information to the informant reasonably support the inference that the third party was telling the truth about where he obtained the contraband. Presumably, the third party neither knew Deputy Martin's informant was working with the police, nor expected his report about the appellants' illegal activities to reach law enforcement authorities. Under the circumstances, the third party had no reason to lie about the source of the drugs in his possession. In this context, Professor LaFave observes:
 "In the hearsay-upon-hearsay situation, as where an informant of established reliability tells police what someone else has told him, there is a need to establish veracity with respect to each person in the hearsay chain. This can be done by showing that those other links made admissions *Page 211 
against their penal interest. Indeed, as a general proposition there is more reason to rely upon such admissions than admissions made directly to the police, for in the latter situation there is always the chance that the informer is a stoolie who perceives he can admit to criminality without significant risk. Thus, in Comi v. State, upholding an affidavit reciting what a reliable police informer said an admitted burglary participant had told him, the court correctly reasoned:
 " 'The secondary source here was not a paid police informer, nor promised any sort of inducement to speak. In fact he had no way of knowing his information would eventually arrive at police headquarters. He was merely relating an occurrence to a friend. We conclude that [the secondary source] had no motive to lie and his information was conveyed in circumstances consistent with its reliability.' "
1 W. LaFave, Search Seizure § 3.3(c) at 652 (quoting Comi v.State, 26 Md. App. 511, 516, 338 A.2d 918, 922 (1975)) (footnotes omitted).
In State v. Maldonado, 322 N.W.2d 349 (Minn. 1982), a case with similar facts, the police officer-affiant received information from a known reliable informant, who in turn, received his information from X, an unnamed third party. X told the informant that X had bought drugs from three Mexican males in an orange and white Chevrolet pickup truck in the parking lot of a certain manufacturing plant. When the police officer-affiant later spotted an orange and white truck at the named plant, he searched the truck and arrested the occupants.
Analyzing the probable cause issue under theAguilar-Spinelli test, the Minnesota court observed: "The real issue is whether [X] was telling the truth to the informant."Maldonado, 322 N.W.2d at 352. The court ruled that there was a substantial basis for believing X because "[X's] credibility with respect to this information was established by the fact that the statements were against his or her penal interest."Id. Since the Maldonado informant did not actually see any drugs in X's possession, the facts of the present case present an even stronger basis for crediting the report of the unnamed third party here, because he was seen with contraband.
We hold that the deputies had at least reasonable suspicion to stop the appellants' truck on Boe Road. That suspicion ripened into probable cause when the appellants attempted to elude the officers in a high speed chase while tossing "objects" from the truck. See Molina v. State, 533 So.2d 701
(Ala.Cr.App. 1988), cert. denied, 489 U.S. 1086,109 S.Ct. 1547, 103 L.Ed.2d 851 (1989), where this Court observed:
 " 'Although the initial stop of the suspect may have been justified only by reasonable suspicion, additional facts gathered from that stop may strengthen that suspicion into probable cause.' United States v. Martinez, 808 F.2d 1050, 1055 (5th Cir.), cert. denied, 481 U.S. 1032, 107 S.Ct. 1962, 95 L.Ed.2d 533 (1987). See Stanfield v. State, 529 So.2d 1053 (Ala.Cr.App. 1988). See also State v. Booth, 202 Neb. 692, 276 N.W.2d 673, cert. denied, Booth v. Nebraska, 444 U.S. 982, 100 S.Ct. 485, 62 L.Ed.2d 409 (1973) (tip from citizen plus furtive gestures by suspect amounted to probable cause).
 " '[T]he "furtive gesture rule" . . . had its genesis in Terry and was expanded upon in Sibron
[v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)], which provides that a furtive gesture when coupled with prior reliable information may constitute probable cause for search or arrest.' State v. Booth, 202 Neb. at 698, 276 N.W.2d at 676 (citations omitted).
 " '[D]eliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest.' [Sibron and] Peters v. New *Page 212 York, 392 U.S. 40, 66, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968)."
Molina, 533 So.2d at 707.
Regardless whether the Tupperware-type container was spotted by the officers before or after the arrest of the appellants, it was properly admitted in evidence because, according to the officers, it was laying in plain view in the bed of the truck. Items found in plain view are not considered products of a search. Duck v. State, 518 So.2d 857, 858 (Ala.Cr.App. 1987);Harbor v. State, 465 So.2d 455, 458 (Ala.Cr.App. 1984), cert. quashed, 465 So.2d 460 (Ala. 1985). While the officers' testimony with regard to the location of the Tupperware-type container was contradicted by the testimony of appellant Atwell, conflicting evidence given at the suppression hearing presents a credibility choice for the trial court. See Bradleyv. State, 494 So.2d 750, 760-61 (Ala.Cr.App. 1985), affirmed,494 So.2d 772 (Ala. 1986), cert. denied, 480 U.S. 923,107 S.Ct. 1385, 94 L.Ed.2d 699 (1987). Here, the trial court, although not specifically so stating, indicated that it found the Tupperware-type container to have been in plain view. Absent an abuse of discretion, this finding is not to be disturbed on appeal. See Herriman v. State, 504 So.2d 353, 359
(Ala.Cr.App. 1987).
We note that even if the Tupperware-type containerhad been discovered as the result of a search, it would have been admissible because, by the time it was found, the deputies had probable cause to arrest and to search both the appellants and the truck. See Molina v. State, 533 So.2d at 707. "Where the formal arrest follow[s] quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search precede[s] the arrest rather than vice versa." Rawlings v. Kentucky, 448 U.S. 98,111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980).
Although the issue was raised at trial, the appellants have not, in this appeal, questioned the admissibility of the Tupperware-type container in connection with their assertion that their arrests in Mississippi by Alabama law enforcement officers were illegal. Consequently, we expressly donot address that issue. Compare Crawford v. State,479 So.2d 1349, 1352-54 (Ala.Cr.App. 1985) (defendant argued on appeal that his arrest in Florida by Alabama law enforcement officer was unlawful and that, therefore, his statements given subsequent to that arrest should have been suppressed).
 III
The appellants maintain that the evidence was insufficient to support their convictions for trafficking in marijuana. We agree.
In order to convict the appellants of this offense, the State had to prove that they were "knowingly in actual or constructive possession of" more than 2.2 pounds of marijuana. Ala. Code 1975, § 13A-12-231(1). The bag found on Boe Road contained more than 2.2 pounds of marijuana.[5] See Ex partePresley, 587 So.2d 1022 (Ala. 1991). However, the circumstantial evidence linking the appellants to this bag is far from that necessary to support a conviction.
The testimony of Deputy Martin was offered after the appellants made their motions for judgment of acquittal and was given out of the presence of the jury. Consequently, it cannot be considered in our review of the State's evidence. See,e.g., Colvette v. State, 568 So.2d 319, 321 (Ala.Cr.App. 1990);Kimbrough v. State, 544 So.2d 177, 181 (Ala.Cr.App. 1989). As for the remainder of the State's evidence, Deputy Earl stated only that he saw a "large object" thrown out of the passenger window of the truck at the curve on Boe Road. An hour to an hour and a half later, *Page 213 
Deputy Lee found a bag of marijuana at a curve on Boe Road. This is essentially the substance of the State's evidence regarding the appellants' connection with the bag of marijuana.
Deputy Hill, who was driving the unmarked unit immediately behind the truck, did not testify concerning any object being thrown out at the curve on Boe Road. Deputy Earl did not stop to pick up this "object" at the time it was thrown out and, from aught that appears in the record, did not radio any back-up units to retrieve the "object," even though Deputy Lee testified that he was following the chase route and Deputy Martin was obviously in the same vicinity. Deputy Earl did not further describe the "object" at trial. Deputy Lee testified that Earl did not describe the "object" to him in any manner before he (Lee) left the store to look for items along the chase route. There was a time lag of an hour to an hour and a half between the time at which Deputy Earl saw the "large object" being thrown out of the truck window and the time the plastic bag was found. Deputy Lee did not testify as to which side of the road he found the "object." Although the bags containing green plant material were submitted for fingerprinting, there was no evidence that either of the appellants' fingerprints were found on any of the bags. Most importantly, the "object" found by Deputy Lee was neveridentified by Deputy Earl as the "object" he observed beingthrown from the truck. Compare Johnson v. State,484 So.2d 1121, 1122 (Ala.Cr.App. 1985) (officer identified " 'cellophane bag wrapped in tin foil' " as object dropped by defendant during chase); Dorton v. State, 419 N.E.2d 1289, 1294 (Ind. 1981) (officer specifically identified certain items as items he had picked up after observing a bag being thrown from a fleeing car).
In Story v. State, 435 So.2d 1360 (Ala.Cr.App. 1982), a bag containing drugs was found under the passenger seat of a car. A witness testified that, earlier in the evening, he had seen the passenger with a bag that "looked 'something like' " the bag found in the car. 435 So.2d at 1362. The Alabama Supreme Court reversed the passenger's possession conviction, holding that the witness's testimony was "insufficient to link" the passenger to the bag containing the drugs. Ex parte Story,435 So.2d 1365, 1366 (Ala. 1983). In the present case, we do not even have testimony that the bag found on Boe Road looked "something like" the "large object" thrown out of the truck.
This Court is well aware that where "circumstantial evidence points to the guilt of the accused, it will support a conviction as strongly as direct evidence." Newsome v. State,570 So.2d 703, 710 (Ala.Cr.App. 1989). Accord, Jones v. State,514 So.2d 1060, 1067 (Ala.Cr.App.), cert. denied,514 So.2d 1068 (Ala. 1987). However, "no rule is more fundamental or better settled than that convictions cannot be predicated upon surmise, speculation, and suspicion to establish the accused's criminal agency in the offense charged." Benefield v. State,286 Ala. 722, 724, 246 So.2d 483, 485 (1971), quoted in Craftsv. State, 439 So.2d 1323, 1325 (Ala.Cr.App. 1983). While it is possible that the bag of marijuana found on Boe Road was originally in the possession the appellants, "the possibility that a thing may occur is not alone evidence even circumstantially that the thing did occur." Parker v. State,280 Ala. 685, 691, 198 So.2d 261, 268 (1967). Applying the principles set forth at length in Dolvin v. State,391 So.2d 133, 137-38 (Ala. 1980), White v. State, 546 So.2d 1014,1016-18 (Ala.Cr.App. 1989), and Cumbo v. State, 368 So.2d 871,874-76 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979), we conclude that the State did not present sufficient evidence to link the appellants to the bag of marijuana found on Boe Road.
We recognize that under the facts of this case, the offenses of first and second degree possession of marijuana defined in Ala. Code 1975, §§ 13A-12-213 and 13A-12-214, are lesser included offenses of trafficking in marijuana. See Dees v.State, 575 So.2d 1225, 1227 (Ala.Cr.App. 1990). The trial judge instructed the jury on both of these lesser included offenses. Compare Ex parte Beverly, 497 So.2d 519, 525 (Ala. 1986). The marijuana in the Tupperware-type *Page 214 
container found in the bed of the truck could form the basis for a conviction of either of these offenses. However, the determination of which of these offenses is appropriate includes a resolution of disputed issues of fact, and presents a jury question. Therefore, this Court cannot simply remand for entry of judgment on the lesser included offense as we did inBuchannon v. State, 554 So.2d 477, 494 (Ala.Cr.App.), cert. denied, 554 So.2d 494 (Ala. 1989), overruled on other grounds,Pardue v. State, 571 So.2d 333, 335 (Ala. 1990).
The issue of whether a retrial of the appellants would be prohibited by the double jeopardy clause of the Fifth Amendment, compare Burks v. United States, 437 U.S. 1,98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) with Lockhart v. Nelson, 488 U.S. 33,109 S.Ct. 285, 102 L.Ed.2d 265 (1988), has not been argued or briefed on appeal or presented to the trial court. We therefore express no opinion on that issue.
The appellants' convictions are reversed and the cause remanded to the circuit court.
REVERSED AND REMANDED.
All Judges concur.
[1] The name of this road also appears as "Bow Road" in the record, although when asked to spell it, Deputy Hill responded, "B-O-E."
[2] Prior to being jailed, appellant Inabinett was taken to a local hospital because he required medical treatment for injuries received during his "scuffle" with the officers.
[3] Both appellants were clearly arrested at the time they were handcuffed. See Lamar v. State, 578 So.2d 1382, 1384
(Ala.Cr.App. 1991) (" 'Generally and except in the most exceptional circumstances, a person must be considered under arrest once he has been handcuffed' ") (quoting Bradley v.State, 494 So.2d 750, 759 (Ala.Cr.App. 1985), affirmed,494 So.2d 772 (Ala. 1986), cert. denied, 480 U.S. 923,107 S.Ct. 1385, 94 L.Ed.2d 699 (1987)). Deputy Earl did not specify whether he saw the Tupperware-type container and the plant material he recognized as marijuana before or after the actual arrests of the appellants.
[4] As noted above, the trial court suppressed the hand-rolled cigarette found during the search of the cab of the truck.
[5] While the toxicologists' testimony was not precise as to whether the plant material in this bag was actually marijuana, Deputy Lee had earlier testified that he identified the plant material in this bag as marijuana. Deputy Lee's qualifications in this area were not questioned by either appellant and no objection whatsoever was made to his identification of the plant material. Compare Garrett v. State, 504 So.2d 319, 322-23
(Ala.Cr.App. 1986).